UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEITH W. CANTER,
    Plaintiff,

vs.

ANKERMES BLUE CARE ELECT
PREFERRED PROVIDER PLAN, et al.,
    Defendants.

Case No. 1:17-cv-399
Dlott, J.
Litkovitz, M.J.

**ORDER**

## I.  Introduction

Plaintiff Keith Canter brings this action against defendant Blue Cross Blue Shield of

Massachusetts, Inc. (BCBS) under the Employee Retirement Income Security Act of 1974

(ERISA), 29 U.S.C. §1001 *et seq.*, to collect healthcare benefits under an Employee Welfare

Benefit Plan.  The Plan provides group healthcare benefits to employees covered by the

Alkermes Blue Care Elect Preferred Provider Plan (the Plan).  (Doc. 1).  Plaintiff is an employee

of Alkermes, Inc. and at all relevant times was covered by the Plan.  Plaintiff seeks to recover

benefits for a lumbar decompression and discectomy and related procedures performed by Dr.

Raj Kakarlapudi at the Laser Spine Institute on July 6, 2015.

Plaintiff brings claims for breach of fiduciary duty under 29 U.S.C. § 1104(a)(1)(D),

alleging that defendant failed to exercise its statutorily-mandated duty of care and prudence,

failed to administer the Plan solely in the interests of the participants and beneficiaries, and

denied benefits to plaintiff contrary to applicable law, regulations and Plan terms.  Plaintiff

alleges that the Plan language does not give deference to BCBS, and BCBS operates under a

conflict because it pays benefits under the Plan.  Plaintiff alleges that defendant did not apply the

Plan language in administering benefits, failed to thoroughly investigate plaintiff's claim, and

arbitrarily ignored and failed to respond to documents plaintiff submitted.  Plaintiff also alleges

that defendant did not comply with ERISA's procedural requirements, and specifically with 29

C.F.R. § 2560.503-1 *et seq.*, by providing plaintiff with a specific notice and an initial denial of

benefits informing plaintiff of what was required in order to perfect his claim. Plaintiff also

alleges that BCBS has produced incomplete Plan documents, which are attached to the complaint

as Exhibits 1-107, and has not produced the entire Plan with the Schedule of Benefits and other

relevant sections in violation of 29 U.S.C. § 1132(c)(1), subjecting BCBS to statutory liability.

Plaintiff alleges in Count II that ERISA mandates that an employee benefits plan shall be

established and maintained pursuant to a written instrument under 29 U.S.C. § 1102(a)(1).

Plaintiff alleges that under the clear terms of the Plan, BCBS's decision to deny the payment of

healthcare benefits to him was unreasonable and without a legal basis under the Plan document.

As relief, plaintiff seeks an order requiring defendants to pay him healthcare benefits in

the amount he is entitled under the Plan; that the Court declare his rights under ERISA, the Plan,

and applicable Ohio insurance laws and issue an Order under 29 U.S.C. § 1132; that the Court

award plaintiff statutory penalties under 29 U.S.C. § 1132 for defendant's failure to produce the

requested Plan documents; and that the Court award plaintiff attorney fees.

## II. Motion to Compel

This matter is before the Court on plaintiff's motion to compel discovery (Doc. 52) and

defendant's motion for leave to file a corrected memorandum in opposition to the motion to

compel (Doc. 58), which plaintiff does not oppose. Defendant's motion is granted and the

corrected memorandum (Doc. 58-2) is accepted for filing. Plaintiff has filed a reply and

supplemental reply in support of his motion to compel. (Docs. 56, 60). Plaintiff seeks to compel

production of responses to his Amended First Set of Interrogatories, Request for Production of

Documents, and Request for Admissions (Doc. 52-2) pursuant to Fed. R. Civ. P. 37(a)(3)(B).

In his motion to compel, plaintiff alleges that BCBS did not give him an opportunity for a "full and fair review" as required under ERISA, 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(h). Plaintiff alleges that BCBS "failed to give him adequate notice" in compliance with 29 C.F.R. § 2560.503-1(g)[1] and that defendant filed a "selective and incomplete" administrative record (AR) with the Court. Plaintiff contends that defendant did not give specific reasons for denying him benefits so that he could attempt to provide additional evidence upon administrative review to correct any deficiencies, and the denial notice did not provide sufficient information about the steps for obtaining a review. Plaintiff states that he seeks the following types of discovery: (1) "compensation of the paid paper reviewer," (2) "limited discovery related to the existence of incentives and rewards," and (3) "conflict of interest regarding the data of the financial payments to the reviewers that he has requested." (Doc. 52 at 9).

Plaintiff argues that discovery is available in an ERISA case when it is necessary to go beyond the AR to resolve a claimant's "procedural challenge," which can include (1) a lack of due process, or (2) an allegation of bias. (Doc. 52). Plaintiff indicates that he is raising a due process challenge to BCBS's decision denying his claim for benefits and that to obtain discovery under the governing case law, it is necessary only that he allege bias and prejudice in the handling of his claim. (*Id.* at 7, 8). Plaintiff argues he has alleged procedural deficiencies in administering his benefits that violated his due process rights and that defendant has made only conclusory allegations that are insufficient to rebut his claims. (*Id.* at 9).

Plaintiff alleges that the evidence of defendant's "bias and prejudice is replete in the record" and consists of the following: (1) defendant's alleged failure to comply with its fiduciary

---

[1] Title 29 C.F.R. § 2560.503-1(g) implements 29 U.S.C. § 1133. *Butler v. United Healthcare of Tennessee, Inc.*, 764 F.3d 563, 570-71 (6th Cir. 2014) (citing 29 C.F.R. § 2650.503-1(a)).

duties under 29 U.S.C. § 1104(a) by neglecting to respond to pre-suit inquiries plaintiff's attorney had made on his behalf as required under the terms of the Plan; (2) defendant's failure to administer plaintiff's benefits in accordance with the terms of the Plan; (3) Richard Lewis, M.D.'s failure to obtain plaintiff's medical records and the physician's alleged reliance solely upon the operative report and a finding of an insufficient medical history when issuing his denial of benefits on March 14, 2016, in violation of the Plan document (Doc. 25 at PageID#: 704); (4) the claim denial letter authored by Carol Abreu which allegedly makes material misrepresentations as to the information that was reviewed by the "hired paper reviewer," misrepresents the claim at issue as $41,034.00, and fails to comply with 29 C.F.R. § 2560.503-1 *et seq.*" (Doc. 25, PageID#:111-149); (5) defendant's failure to respond to plaintiff's appeal submitted through counsel on November 23, 2016 (*Id.*, PageID#: 732-772); (6) defendant's alleged failure to provide the entire Plan document after multiple requests as reflected in the correspondence and documents sent by counsel; (7) defendant's alleged failure to file an appropriate answer "in violation of its duties under the rules"; (8) defendant's failure "to admit documents that were attached to the complaint for which evidence of receipt was incorporated into the Complaint"; (9) the "need to [sic] plaintiff to file a Motion to Deem Admitted or Order Amendment" (Doc. 31); (10) the filing of an allegedly "incomplete, unattested record, Doc. 25-26, that failed to contain relevant attempts of Plaintiff Canter to pursue his rights" and "selective inclusion" of documents; (11) defendant's allegedly "consistent conflation" of "an appeal of the denial and a grievance" as those terms are used under the Plan, which purportedly caused internal confusion and confusion to plaintiff; and (12) defendant's apparent decision to flag plaintiff's claim for special treatment because it was a "high dollar claim." (Doc. 25, PageID#: 665, 666).

4

Defendant alleges in response that plaintiff has not made the threshold showing necessary to obtain discovery in an ERISA case. Defendant asserts it is the claims administrator with discretion to grant or deny claims for medical expenses under the Plan.[2] (Doc. 58-2 at 2). BCBS alleges that plaintiff's "mere allegation" that it "operates under an inherent conflict of interest and his conclusory allegations of due-process violations" do not suffice to justify discovery. Defendant argues that plaintiff must assert more than a mere claim of bias based on an inherent conflict of interest and produce evidence of bias or a colorable due process violation in order to obtain discovery. Defendant contends that plaintiff has not carried his burden and none of the 11 reasons plaintiff has offered to show that he is entitled to discovery are valid.

First, defendant asserts that it had no fiduciary obligations to plaintiff as the Plan administrator, including any obligation to forward Plan documents, plaintiff's entire claim file, and additional information and documents sought by plaintiff related to administration of the Plan and of his particular claim. (*See* Doc. 1-4 at PageID#: 167-229). Defendant contends it was not specifically designated the Plan administrator under 29 U.S.C. § 1002(16); rather, Alkermes is designated as the Plan administrator and BCBS is the claims administrator with discretionary authority to grant or deny claims but with no obligation to forward information or documents upon a Plan member's request. (Doc. 58-2 at 7-8, citing Doc. 25 at PageID#: 800; *Butler*, 764 F.3d at 570) (insurer was not plan administrator and therefore was not subject to statutory penalty imposed on plan administrators under §1132 for a refusal to comply with a request for information). Defendant alleges that it nonetheless provided the documents plaintiff requested and that doing more than the Plan or ERISA requires is not evidence of bias or prejudice. (Doc. 58-3 at 12).

---

[2] Plaintiff's employer, Alkermes, is the Plan administrator.

Second, defendant argues that plaintiff's assertion that BCBS failed to administer his benefits in accordance with the terms of the Plan, in particular by relying on the InterQual criteria which do not appear in the Plan, is a legal conclusion that is unsupported by the record and is not evidence of bias or a due process violation that requires discovery beyond the AR. (Doc. 58-2 at 9-10). BCBS contends that the Plan permits it to consider "clinical sources that are generally accepted and credible" in determining whether services are medically necessary (*Id*. at 13, citing Doc. 25 at PageID#: 774-75, 837), and federal courts have repeatedly approved BCBS's use of the InterQual guidelines. (*Id*., citing *Jon N v. BlueCross BlueShield Mass., Inc.*, 684 F. Supp.2d 190, 196 (D. Mass. 2010)).

Third, defendant asserts that Dr. Lewis's alleged failure to obtain medical records in making his claim denial determination on March 14, 2016 is not evidence of bias but instead is a substantive argument that defendant's decision was arbitrary and capricious because defendant "failed to investigate and gather information on pertinent issues." (*Id*. at 11, citing *Jones v. Allen*, No. 2:11-cv-380, 2014 U.S. Dist. LEXIS 40536, at *16 (S.D. Ohio Mar. 25, 2014)).

Fourth, BCBS argues that plaintiff's claim that it deprived him of due process by failing to fulfill the notice requirements of 29 C.F.R. § 2560.503-1(g) is not valid. Defendant argues that the denial notice substantially complies with the regulation because it provides a "sufficiently clear understanding of [the] decision to permit effective review." (Doc. 58-2 at 11-13, citing *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006)). BCBS alleges the notice sets forth the specific reason why it denied plaintiff's claim (lack of evidence of medical necessity under the InterQual guidelines), enclosed the InterQual guidelines, identified the Plan provision at issue (the medical necessity criteria), and directed plaintiff to the evidence upon which its decision was based. (*Id*. at 12, citing Doc. 25 at PageID#: 704-08, 709-12).

Fifth, defendant argues that plaintiff has not explained how the April 22, 2016 letter notifying him that his appeal had been denied misrepresents what information the medical expert considered or how reference to the amount at issue demonstrates bias or due process violations. (Doc. 58-2 at 13-14). Defendant argues that plaintiff's "[u]nsubstantiated concerns, coupled with unresolved factual questions on the details of how his claim was processed" do not suffice to justify discovery. (*Id.* at 13, citing *Alekna v. AT&T Serv., Inc.,* No. 5:17-cv-400, 2018 WL1251767, *3 (N.D. Ohio Mar. 12, 2018) (citation omitted)). Defendant argues that the appeal letter complies with federal regulations for the same reasons the initial denial letter does. (*Id.* at 14, citing Doc. 25, PageID#: 773-97); *Smith v. ReliaStar Life Ins. Co., Inc.*, No. 3:17-cv-285, 2018 WL 2149734 (S.D. Ohio May 10, 2018) (the Sixth Circuit follows the "substantial compliance rule" for ERISA notice requirements under which the court asks "whether the plan administrator's notice provided a sufficiently clear understanding of its decision to permit effective review" and "considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances.") (citing *Moore*, 458 F.3d at 436).

Sixth, defendant argues that it had no obligation to consider the appeal submitted by plaintiff's counsel because the Plan provides for only one internal appeal for Plan members seeking reimbursement of medical expenses. (Doc. 58-2 at 14-15, citing *Huffaker v. Metro Life Ins. Co.*, 271 F. App'x 493, 499 (6th Cir. 2008) (the defendant did not act arbitrarily in closing the record since the Plan allowed for only one appeal)).

Seventh, BCBS argues it had no obligation to forward the Plan to plaintiff but it nonetheless did so three days after plaintiff requested a copy of it. (*Id.* at 16).

Eighth, BCBS argues that its answer to the complaint is irrelevant to any procedural challenge to the underlying administrative decision because the answer is not evidence of bias or prejudice. (*Id.* at 16-17).

Ninth, defendant argues that its supplementation of the AR is not evidence of bias or prejudice. Defendant asserts that it supplemented the record with documents that were provided by plaintiff's counsel months after BCBS made the final decision on plaintiff's claim; therefore, BCBS was not required to consider the documents. (Doc. 58-2 at 17-18, citing *Moon v. UNUM Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) (judicial review "is confined to the administrative record as it existed" on date when final coverage decision made)).

Tenth, BCBS argues that alleged confusion between an "appeal" and a "grievance" in the record is not evidence of bias or prejudice. (*Id.* at 18-19). BCBS acknowledges that the April 22, 2016 denial letter denying plaintiff's appeal mistakenly referred to the appeal as a "grievance," but BCBS alleges this was nothing more than a clerical error that does not entitle plaintiff to discovery. (*Id.*).

Eleventh, defendant argues there is no evidence indicating that BCBS gave plaintiff's claim "special" or "selective" treatment simply because it was flagged as a "high dollar claim." (*Id.* at 19).

Defendant further argues that even assuming plaintiff is entitled to discovery, plaintiff's discovery requests are improper because they bear no connection to a specific allegation of bias or denial of due process and instead seek substantive discovery regarding the basis for BCBS's decision on plaintiff's claim (Interrogatory Nos. 1, 3, 6-7, 13, Request for Document Production No. 7, Request for Admission Nos. 2-5); can be answered based on a cursory review of the AR (Interrogatory Nos. 1-8; Request for Production Nos. 1-4; Request for Admission Nos. 1-5);

pertain to communications between plaintiff's counsel and BCBS after the final coverage decisions and to the monetary value of plaintiff's claim, which are not relevant (Interrogatory Nos. 6, 8-9, 12-13; Request for Admission Nos. 1-5); relate to extraneous matters, such as whether BCBS relied on "medical technology assessment criteria" that BCBS was under no obligation to consider (Request for Admission Nos. 2-4); and are overbroad and vague (Interrogatory Nos. 2, 3; Request for Production Nos. 1, 2, 3, 6, 7). (Doc. 58-2 at 20).

Plaintiff alleges that evidence of bias and prejudice that is sufficient to warrant discovery in this case includes evidence that defendant did not comply with its due process obligations to consider the subsequent appeal filed by counsel on plaintiff's behalf, evidence that BCBS did not obtain relevant medical records, and evidence that plaintiff's claim was flagged for selective treatment as a "high dollar claim." (Doc. 56).

## III. Permissible scope of discovery under ERISA

The Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). The scope of discovery is within the trial court's broad discretion. *Pearce v. Chrysler Group, L.L.C. Pension Plan*, 615 F. App'x 342, 350 (6th Cir. 2015). Discovery generally is not permitted in an ERISA case and a district court may ordinarily review only the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). An exception exists, however, when evidence outside the record is offered to support "a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.'" *Pearce*, 615 F. App'x at 350 (quoting *Wilkins*, 150 F.3d at 619); *see also Johnson v. Conn. Gen. Life Ins. Co.*, 324 F. App'x 459, 466 (6th Cir. 2009). In instances involving such challenges, evidence outside the record

may be relevant and discoverable. Any discovery must be confined to the procedural challenge that warrants the discovery, and evidence outside the record may be considered only insofar as it relates to the procedural challenge. *Moore*, 458 F.3d at 430.

A conflict of interest is a type of bias that may warrant additional discovery. *Collins v. Unum Life Ins. Co. of Am.*, 682 F. App'x 381, 389 (6th Cir. 2017). An inherent conflict of interest exists when a plan administrator serves the dual role of an ERISA plan administrator and payor of plan benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 113 (2008); *see also Morrison v. Regions Financial Corp.*, 941 F. Supp.2d 892, 903 (W.D. Tenn. 2013) ("The Sixth Circuit has held that an inherent conflict of interest arises when 'the same entity determines eligibility for benefits and also pays those benefits out of its own pocket'."). Courts have likewise found an inherent conflict of interest where an insurance company administers claims under a policy it issues. *See Lee v. Blue Cross/Blue Shield of Alabama*, 10 F.3d 1547, 1552 (11th Cir. 1994); *Armstrong v. Aetna Life Ins. Co.*, 128 F.3d 1263, 1265 (8th Cir. 1997). *Cf. Duckett v. Blue Cross and Blue Shield of Alabama*, 123 F. Supp.2d 1286, 1295 (M.D. Ala. 2000) (insurance company did not have a conflict of interest where the plan was a self-insured plan and the employer bore the burden of fully reimbursing the insurer, which therefore "would not suffer any direct, immediate expense as a result of benefit determinations favorable to plan participants."). Where such a structural conflict of interest exists, it must be weighed in determining whether the administrator's decision met the arbitrary and capricious standard. *Glenn*, 554 U.S. at 117.

Although a "threshold evidentiary showing of bias" need not be made as a prerequisite to discovery where there is an administrator/payor conflict, discovery is not "automatically [] available any time the defendant is both the administrator and the payor under an ERISA plan."

*Jones v. Allen*, 933 F. Supp.2d 1020, 1024 (S.D. Ohio 2013) (citing *Johnson*, 324 F. App'x at 466-67). *See also Collins*, 682 F. App'x at 389 (the mere existence of a structural conflict does not mean that discovery "will automatically be available" in an ERISA case). The claimant "must put forth a factual foundation to establish that he has done more than merely allege bias." *Collins*, 682 F. App'x at 389 (citing *Pearce*, 615 F. App'x at 350). *See, e.g., Sim v. Reliance Std. Life Ins. Co.*, No. 1:15-cv-390, 2016 WL 319868, at *4 (S.D. Ohio Jan. 26, 2016) (Litkovitz, M.J.) (allowing discovery where there was both a structural conflict of interest and additional evidence suggestive of bias); *Cummins v. Liberty Life Assurance Co. of Boston*, No. 2:10-cv-108, 2010 WL 4809269, at *4 (S.D. Ohio Nov. 19, 2010) (permitting discovery because beyond the mere existence of a conflict, plaintiff offered additional evidence suggesting bias; specifically, there was "evidence suggesting that a significant financial relationship exists between Defendant and its medical experts, all of whom found Plaintiff not to be disabled without an examination, based on a paper review, as compared to all of Plaintiff's treating and examining physicians, who found Plaintiff to be disabled"); *Geer v. Hartford Life & Accident Ins. Co.*, No. 08-12837, 2009 WL 1620402, at *5-7 (E.D. Mich. Jun. 9, 2009) (finding a "plaintiff must first have some evidence of bias before being allowed to conduct discovery," and allowing discovery because in addition to a structural conflict, plaintiff presented evidence regarding defendant's claims practices that was sufficient to warranted limited discovery regarding the business relationship between the defendant administrator and the file reviewer in the context of disability claims file reviews and recommendations, and defendant failed to address Social Security award in making its own benefits decision).

It is not an abuse of discretion for the district court to deny discovery based on mere allegations of bias where the claimant has failed to establish a factual foundation. *Collins*, 682 F.

App'x at 389. Further, when an ERISA claimant alleges a due process violation, discovery beyond the administrative record is impermissible "until a due process violation is at least colorably established." *Allen*, 933 F. Supp.2d at 1024 (citing *Moore,* 458 F.3d at 431) (internal quotation marks omitted) (citation omitted). The due process inquiry focuses on "whether the reviewer gave the claimant a full and fair hearing." *Alekna*, 2018 WL 1251767, *1 (citation omitted). To fulfill due process requirements, a claimant must have the opportunity to present reasons why a certain decision should or should not be made. *Jones v. Iron Workers Loc. 25 Pension Fund*, No. 14-10031, 2014 WL 12775664, at *6 (E.D. Mich. Aug. 15, 2014) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543, 545-46 (1984)). "[D]ue process requires nothing beyond providing the reasoning for a decision and giving notice of the means of appealing that decision, if applicable." *Id*. (quoting *Commissioner v. Stewart*, 186 F.2d 239, 241 (6th Cir. 1951)). Courts in the Sixth Circuit have found due process violations in ERISA cases based on a lack of information as to the factual basis used to support a denial of benefits; a failure to state specific reasons for the denial of a claim; the failure to notify a claimant of appeal procedures; and a failure to provide a reasonable opportunity for a full and fair review of the decision. *Id*. (citing *Chambers v. Prudential Ins. Co. of America*, No. 0270317, 2002 U.S. Dist. LEXIS 27700, *8 (E.D. Mich. Oct. 31, 2002)).

"District courts are well-equipped to evaluate and determine whether and to what extent limited discovery is appropriate in furtherance of a colorable procedural challenge under *Wilkins*." *Allen*, 933 F. Supp.2d at 1024. In deciding whether discovery into an alleged due process violation is warranted, the first question is whether the discovery sought is "necessary to resolve" the plaintiff's claim that the defendant violated his right to due process by failing to comply with ERISA, 29 U.S.C. § 1133. *Iron Workers Loc. 25 Pension Fund*, 2014 WL

12

12775664, *9 (citing *Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (6th

Cir. 1992); *Blajei v. Sedgwick Claims Mgt. Services, Inc.*, 721 F.Supp.2d 584, 609-12 (E.D.

Mich. 2010)). Section 1133 requires that employee benefit plans:

> (1) provide adequate notice in writing to any participant or beneficiary whose
> claim for benefits under the plan has been denied, setting forth the specific
> reasons for such denial, written in a manner calculated to be understood by the
> participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits
> has been denied for a full and fair review by the appropriate named fiduciary
> of the decision denying the claim.

29 U.S.C. § 1133.

When it is not clear what records a plan or claims administrator has considered, discovery

may be allowed into "whether a complete administrative record has been assembled, whether any

relevant material was not submitted to the [] Administrator, and what was considered by the []

Administrator." *Allen*, 933 F. Supp.2d at 1025 (citing *Pediatric Special Care, Inc. v. United

Medical Resources*, No. 10-13313, 2011 WL 133038, *2 (E.D. Mich. Jan. 14, 2011); *Crosby v.

Louisiana Health Service & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011)). A failure to

investigate pertinent evidence may arise from a conflict of interest and the discovery regarding

the conflict of interest may demonstrate a clear due process violation, so that discovery is

warranted. *Id.* at 1025. "If discovery into alleged procedural defects supports a plaintiff's

allegations of due process denial, then a district court is obligated to permit discovery into more

substantive areas of a plaintiff's claim." *Id.* at 1026 (quoting *Moore*, 458 F.3d at 430-31).

If the court does not find a colorable due process violation, however, then it is

appropriate to deny further discovery into substantive areas; otherwise, a "plaintiff could

circumvent the directive of *Wilkins* merely by pleading a due process problem." *Id.* (quoting

Moore, 458 F.3d at 431). Although new evidence related to procedural inquiries may be

admitted in an ERISA action, it is not properly introduced to challenge a plan administrator's substantive determination. *Id.* (citing *Moore*, 458 F.3d at 429-31; *Wilkins*, 150 F.3d at 618-19).

If discovery is warranted, "the court must balance the claimant's interest in obtaining relevant information against the primary goal of ERISA of providing inexpensive and expeditious resolution of claims" to determine the proper scope of discovery. *Sim*, 2016 WL 319868, *4 (citing *Brainard v. Liberty Life Assurance Co. of Boston*, No. 6:14-cv-110, 2014 WL 7405798, * 10-11 (E.D. Ky. Dec. 30, 2014)); *see also Price v. Hartford Life and Acc. Ins. Co.*, 746 F. Supp.2d 860, 865-66 (E.D. Mich. 2010) (in exercising its discretion and considering the burden of discovery, the court should be mindful of ERISA's goals of resolving disputes expeditiously and inexpensively).

## IV. Plaintiff's entitlement to discovery

Plaintiff has alleged a factual foundation of bias and has alleged a colorable due process claim which entitles him to discovery. Plaintiff has offered evidence of an inherent conflict of interest in that defendant BCBS functions as both the claims administrator and the payor of the benefits. Plaintiff has also pointed to evidence that his claim may have been treated differently than other claims because of its "high dollar amount" and that he may have been denied a full and fair review as discussed more fully *infra* in connection with his specific discovery requests. Plaintiff's discovery requests are resolved as follows:

### A. Interrogatories

#### *1. Interrogatory No. 1 - Request for citation to Plan provision*

Plaintiff seeks discovery on the following notation that appears in the AR:

"RAT: The member did not meet the medical necessity criteria required for coverage of the lumbar transpedicular decompression and discectomy. For coverage, there must be documentation of our member's symptoms, physical findings, imaging results, and specific nonoperative therapies including anti-

inflammatory medications, activity modification, and either a supervised home exercise program or physical therapy. Imagingf [sic] must confirm neural compression or a diagnosis made on electromyography, nerve conduction studies."

(Doc. 52-2 at 4, citing Doc. 25 (AR) PageID#: 665-666). Plaintiff requests the specific page number in the Plan that contains this requirement. Plaintiff alleges that this discovery will show whether his "benefits were administered in accordance with the terms of the Plan document." (Doc. 52 at 14). Plaintiff alleges he is entitled to discover this information under 29 U.S.C. § 1104(a)(1)(D), which requires BCBS to adhere to the Plan documents, and 29 C.F.R. § 2560.503-1(g)(1)(ii), which requires that the denial notification contain the specific reason for the adverse determination. Plaintiff alleges he cannot locate a Plan provision "which supports the basis for this denial in the record" and it appears from a review of the record that "this denial was based solely upon the operative report."

Plaintiff is entitled to the information he seeks in Interrogatory No. 1. This information is material to whether plaintiff received the notice he was due of the reason for the denial of his claim and the notice of the Plan provision on which the denial was based. *See Myers v. Anthem Life Insurance Company*, 316 F.R.D. 186, 202 (W.D. Ky. 2016) (the plaintiff is entitled to know whether the defendant complied with 29 C.F.R. § 2560.503-1(g)(1) and particularly if the defendant provided him with notice of the specific reasons for its denial; consequently, the defendant was required to provide and identify the documents in which it informed the plaintiff of its reasons for denying her benefits claim). The discovery request is not burdensome and will not interfere with the expeditious resolution of this case. Defendant is directed to answer Interrogatory No. 1.

## 2. Interrogatory No. 2 - Request to identify medical professionals

Plaintiff asks defendant to identify every medical professional involved in deciding his claim and to state the individual's job title, job duties, and medical specialization "to assure the review was by a healthcare professional who has appropriate training and experience" in the field of orthopedics and/or neurosurgery. Plaintiff also asks for the date on which the individual made their determination, and the document and AR page number of the determination. (Doc. 52-2 at 4). Plaintiff alleges this interrogatory must be answered to "determine conformity with the regulations," and specifically the procedural requirements of 29 C.F.R. § 2560.503-1(h)(3)(iii), (iv), (v). (Doc. 52 at 14). The cited provisions set forth the minimum requirements which group health plan claims procedures must meet to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination. The regulation provides that if a plan fails to establish and follow claims procedures consistent with the requirements of the regulation, the claimant shall be considered to have exhausted the administrative remedies available under the plan, with certain exceptions that do not apply here. 29 C.F.R. § 2560.503-1(l).

The Plan requirements that plaintiff alleges are at issue here are the requirements that: (1) in an appeal of any adverse benefit determination that is based on a medical judgment that a particular treatment is not medically necessary or appropriate, the fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment; (2) the plan must provide for the identification of a medical expert whose advice was obtained on behalf of the plan in connection with an adverse benefit determination, regardless of whether the expert's advice was relied upon in making the benefit determination; and (3) the plan must provide that any healthcare professional and any

16

subordinate of that individual who was engaged for purposes of consultation on the initial adverse benefit determination shall not be consulted on the appeal from that determination. 29 C.F.R. § 2560.503-1(h)(3)(iii), (iv), (v).

Plaintiff is not entitled to the discovery requested in the second interrogatory. Plaintiff has not made any allegations or produced any evidence to show the *Plan* does not provide for the procedures set forth in 29 C.F.R. § 2560.503-1(h). Nor has plaintiff made allegations or produced evidence to show that these procedures were not followed in his case. Plaintiff suggests in his motion that BCBS did not consult with a health care professional who has appropriate training and experience in the field neurosurgery. However, BCBS has clarified in its corrected response that the independent physician it consulted for purposes of plaintiff's appeal - Dr. David H. Segal, M.D. - is a board-certified neurological surgeon.[3] (Doc. 58 at 1-2). BCBS is not required to answer the second interrogatory.

### 3. Interrogatory No. 3 - Request to identify every element of the claims investigation

Plaintiff requests details about "every element of the claims investigation . . . that occurred, either directly or indirectly." (Doc. 52-2 at 5). Plaintiff alleges this is a proper discovery request because the record shows BCBS did not obtain his medical records before the initial denial and instead relied on only the operative report. (Doc. 52 at 15). Plaintiff alleges that BCBS's failure to obtain his records violates 29 C.F.R. § 2560.503-1(a) and (b) and 29 U.S.C. § 1104(a)(1), which require defendant to administer the claim solely for plaintiff's benefit. Plaintiff alleges BCBS's duty extends to obtaining the relevant records. Plaintiff alleges that if the records were obtained, BCBS should identify when and how they were considered.

---

[3] Defendant states that it mistakenly referred to the neurological surgeon who reviewed plaintiff's claim in its opposition memorandum (Doc. 53) as Dr. Christos Hasiotis. (Doc. 58 at 1).

Plaintiff's discovery request for detailed information about every element of the claims investigation, whether it factored into the decision directly or indirectly, is too broad. Any ERISA discovery must be narrowly tailored to find evidence related to the alleged conflict of interest and any allegations of bias. *Geiger v. Pfizer, Inc.*, 271 F.R.D. 577, 582-84 (S.D. Ohio 2010) ("discovery into broad categories of information, such as requests for all claims handling procedures, guidelines or materials not relied upon, submitted, considered, or generated in the course of the benefits determination is not sufficiently related to the issue of a conflict of interest) (citing *McQueen v. Life Ins. Co. of N.A.*, 595 F. Supp.2d 752, 756 n.2 (E.D. Ky. 2009)). The discovery requested in Interrogatory No. 3 is not "narrow in scope and [] specifically designed to discover the circumstances surrounding the conflict of interest." *Id.* (citing *Busch v. Hartford Life and Accident Ins. Co.*, No. CIV.A. 5:10-00111, 2010 WL 3842367, *3 (E.D. Ky. Sept. 27, 2010)).

However, the narrower issue of whether defendant improperly based its decision on an inadequate or incomplete medical record may be a proper topic of discovery. *See Allen*, 933 F. Supp.2d at 1025-26. Discovery is sometimes permitted to explore the issue of completeness of the administrative record that was considered by the claims administrator. *Id.* (citing *Pediatric Special Care, Inc.*, 2011 WL 133038, *2; *Crosby*, 647 F.3d at 263). Here, there is some dispute as to whether defendant considered all of the relevant medical records in making the adverse benefits determination and whether the administrative record is complete. Thus, the Court will direct defendant to answer Interrogatory No. 3, but only to the extent plaintiff seeks information as to the medical records that were available to BCBS in the course of its review, which records it considered, and the review it conducted at each step of the administration process for his claim.

### 4. *Interrogatory No. 4 - Citations to Plan/Certificate of Insurance provisions*

Plaintiff seeks the "location and exact wording in the Certificate of Insurance" that grants

BCBS any discretionary authority it claims under the Plan/Certificate of Insurance. (Doc. 52-2

at 5). This inquiry is pertinent to the conflict of interest inquiry. *See Sim*, 2016 WL 319868, *1,

n.1 (citing *Guy v. Sun Life Assurance Co. of Can.*, No. 10-cv-12150, 2010 WL 5387580, at *2

(E.D. Mich. Dec. 22, 2010)). BCBS can respond to plaintiff's inquiry simply by identifying

portions of the AR record that vest it with discretionary authority to determine a member's claim

for benefits. *See Myers*, 316 F.R.D. at 199. Plaintiff's request is granted.

### 5. *Interrogatory No. 5 - Request for information related to appeal*

Plaintiff seeks information related to an "appeal" plaintiff asserts he made through

counsel on November 23, 2016, after plaintiff's initial appeal had been denied. (Doc. 52-2 at 6,

citing Doc. 25, PageID#: 732-772). Plaintiff asks defendant to identify every individual who

reviewed the appeal and made a final determination, the individual's qualifications, and how and

when they made their determination.

Defendant argues that plaintiff's request for discovery on this issue should be denied

because plaintiff was not entitled to pursue a second appeal, and defendant did not act arbitrarily

in interpreting the Plan to allow only one appeal. (Doc. 58-2 at 15, citing AR 706-08).

Defendant contends the AR shows it explained the appeal process to plaintiff as well as his

options after an appeal. (*Id.*, citing AR 704, 706-08). Defendant notes that plaintiff pursued an

appeal. (Doc. 25 at PageID#: 689). BCBS denied the appeal on April 22, 2016 and informed

plaintiff consistent with the Plan that the internal review process was complete and his remaining

options were to (1) seek final review from the Commonwealth of Massachusetts Health Policy

Commission's Office of Patient Protection, and (2) file a lawsuit under ERISA § 502(a) (Doc. 25

at PageID#: 773-75). Defendant acknowledges that plaintiff fully exhausted his administrative remedies when he filed his first appeal, and defendant argues that it did not act arbitrarily by failing to consider plaintiff's second appeal, which was ineffectual because he is entitled to only one appeal under the Plan. *Id.* at 14 (citing *Huffaker*, 271 F. App'x at 499).

Plaintiff has represented that he received conflicting information about his right to pursue an appeal following denial of the initial appeal. Although defendant asserts that plaintiff was not entitled to a second appeal under the terms of the Plan, plaintiff is entitled to discover whether defendant considered the information he submitted through counsel following the denial of his initial appeal. This request is not overly burdensome. Defendant is directed to answer plaintiff's fifth interrogatory.

### 6. *Interrogatory Nos. 6 & 7- Request for information related to denial letter*

Plaintiff seeks information related to the denial letter dated April 22, 2016, from Carol Flanagan Abreu, Case Specialist, Member Grievance Program, which states it is in response to plaintiff's "grievance" received on March 24, 2016.[4] (Doc. 25 at 111-114). Plaintiff requests: (1) the identity of the physician who made the determination to deny coverage for plaintiff's lumbar hemilaminectomy and placement of percutaneous nerve stimulator motor unit, the physician's qualifications, and the AR page on which the determination appears; and (2) the Plan page on which the criteria for the determination is contained. (Doc. 52-2 at 6-8). Plaintiff also asks defendant to identify "the physician that is alleged to be Board Certified in Neuro Surgery" by name, license number, and licensing state and to cite "where in the record this determination was made," an apparent reference to the determination discussed in the April 22, 2016 letter.

The April 22, 2016 letter, which is part of the AR, states in part:

---

[4] Although the letter refers to plaintiff's action as a "grievance," the AR shows that plaintiff filed an "appeal" from the denial of his claim for medical benefits on March 19, 2016. (Doc. 25 at PageID#: 673).

I am responding to your grievance that we received on March 24, 2016. You asked us to provide coverage for lumbar hemilaminectomy and placement of percutaneous nerve stimulator motor unit by Laser Spine Surgery Center on July 6, 2015 treat [sic] your diagnosis of displacement of lumbar intervertebral disc without myelopathy lumbago or sciatica due to displacement of intervertebral disc. The claim amount is $41,034.00.

An actively practicing non-Blue Cross Blue Cross [sic] Blue Shield of Massachusetts physician board-certified in Neurological Surgery reviewed your request. The physician did not take part in prior decisions.

The physician considered the followed:

- Your emailed letter dated March 24, 2016
- Prior clinical notes reviewed
- Faxed pages from the medical record reviewed
- Your Blue Care Elect Preferred health plan
- InterQual 2012.2 CP: Procedures Adult, Hemilaminectomy, Lumbar, +/-Discectomy/Foraminotomy

After considering your situation, the physician has denied coverage. The reason is the member did not meet the medical necessity criteria required for coverage of lumbar hemilaminectomy and placement of percutaneous nerve stimulator motor unit because there is no documented motor or sensory deficit, weakness, documented nerve root compression on imaging studies or worsening motor deficit. There is also no documentation of failure of physical therapy home exercise or activity modification.

(Doc. 25 at PageID#: 773-776). The letter then quotes the reviewer's findings and advises

plaintiff that the reviewer made the decision "using as a guide the enclosed InterQual clinical

criteria [which] we use [] to help determine if the care meets our enclosed medical necessity

statement." The letter states that based on their review, plaintiff's claim "falls outside the scope

of coverage" and that "[t]his completes the internal grievance process for this request." The

letter advises plaintiff that he has a right to seek final review from the Commonwealth of

Massachusetts Health Policy Commission's Office of Patient Protection and sets forth the

procedures to follow. The letter also advises plaintiff that he has a right to bring a lawsuit under

§ 502(a) of ERISA if he belongs to a plan governed by federal ERISA law. The letter informs

plaintiff that he can send a written request for a copy of the records related to his request and

they would be provided to him free of charge. The letter states that the InterQual clinical criteria and BCBS's "medical necessity statement" are enclosed.

Plaintiff has not provided an explanation for why the information he seeks related to the identity and qualifications of the reviewing physician on appeal and use of the InterQual criteria to evaluate his claim are likely to establish bias or a due process violation. Defendant has corrected its response to the motion to compel to clarify that the reviewing physician on appeal was Dr. Segal (Doc. 52), whose report is found in the AR. (Doc. 25 at PageID#: 716-19). This information should resolve any ambiguity regarding the reviewing physician. Plaintiff is able to review the AR and the Plan to determine whether the InterQual criteria, which are included in the AR at Doc. 25 PageID#: 710-712 and 726-29, are part of the Plan. Plaintiff's request for discovery related to these matters is denied.

### 7. Interrogatory Nos. 8 & 9- Information related to authorization requirement and designation as a "high dollar claim"

Plaintiff seeks information related to (1) an email that his employer's representative at BCBS sent to his employer related to an inquiry made on plaintiff's behalf (Doc. 1-4, PageID#: 166), and (2) a notation in the clinical notes of the claim file stating, "This is a pay sub high dollar facility claim" (*Id*. at 665). (Doc. 52-2 at 9-10). Plaintiff requests the name of the author of the email, their position with BCBS, the citation in the AR for the email, the citation in the "Certificate" for the requirement of "no authorization on file at the time of the services"; the citation for the communication of "the authorization notation" to plaintiff; and the date of the communication. It appears that plaintiff seeks information as to whether precertification was required for his surgery and whether the need for precertification was ever communicated to him.

The email from the BCBS representative, which plaintiff's employer shared with him by email on May 13, 2016, reads as follows:

22

I do see that [plaintiff] had a surgical claim denied on 7/6/2015. It [sic] denied because we required medical records and an itemized bill. I see that information was received; however, the documentation provided did not show medical necessity. A grievance was submitted and denied. This is a high dollar claim with an out of network provider. There was no authorization on file at the time of services. It looks as though they tried to obtain an authorization after the fact (on 3/3/16). That was denied because the member did not meet the criteria for surgery based on the medical records.

(Doc. 1-4 at PageID#: 166).

Plaintiff is entitled to discovery related to whether there was a precertification requirement for his surgery under the Plan; whether that requirement was communicated to plaintiff in a timely manner; and whether plaintiff's claim was handled differently than other claims under the Plan because it was a "high dollar claim." These matters relate to whether plaintiff received notice of the requirements under the Plan and whether BCBS was motivated as both the reviewer and payor of plaintiff's claim to treat the claim differently than other claims because of the large amount of the claim. Defendant is directed to answer Interrogatory Nos. 8 and 9.

### 8. Interrogatory Nos. 10 & 11- Information on entity known as "MCMC"

Plaintiff asks BCBS to identify the entity known as "MCMC" located at an address in Quincy, Massachusetts and identify its relationship to BCBS in detail, explain how long the two entities have had a relationship, state whether the relationship is contractual, explain the nature of the contract, and explain how compensation is paid under the contract. Plaintiff also seeks information related to claim reviews that BCBS either directly or indirectly requested MCMC to perform or that were performed by MCMC on BCBS's behalf for a three-year period prior to plaintiff's claim review from July 2014 to July 2017. For this three-year period, plaintiff requests the number of recommended claim payments; the number of recommended claim denials; the amount that "was paid to MCMC" for the MCMC physician's review of plaintiff's

file; and the total amount of money BCBS has paid to MCMC during the three-year period. (Doc. 52-2 at 10-11).

In support of his request for this discovery, plaintiff states that he seeks "limited discovery related to the existence of incentives and rewards" and argues that "[t]he discovery sought by Plaintiff Canter bias [sic] and prejudice such as the compensation of the paid paper reviewer was permitted in *Sim,* [ 2016 WL 319868, *5]." (Doc. 52 at 9). Plaintiff also relies on *Sim* to allege he "is entitled to conflict of interest [sic] regarding the data of the financial payments to the reviewers that he has requested." (*Id.* at 9-10). Finally, plaintiff argues that "the regulations specifically preclude compensation that is linked to claim reviews to assure unbiased reviews by professional reviewers." (*Id.* at 10, citing 29 C.F.R. § 2590.715-2719(b)(2)(ii)(D)).

In *Sim,* in addition to an inherent conflict of interest, this Court found there was "additional evidence suggestive of bias" because the defendants' finding that the plaintiff was not totally disabled directly conflicted with the Social Security Administration's finding that she was totally disabled. *Id.* (citing *Austin-Conrad v. Reliance Standard Life Ins. Co.,* No. 4:10-cv-127, 2015 WL 4464103, at *5 (W.D. Ky. Jul. 21, 2015)). The Court found that proposed discovery concerning the financial relationship between the defendant and the independent contractors it used to assess plaintiff's claim was relevant to the issue of bias and was therefore discoverable because "if the decision makers relied on opinions or reports which may have been unduly influenced by financial incentives, a court may benefit from information revealing the compensation." *Id.* (citing *Austin-Conrad,* 2015 WL 4464103, *5; *Bird v. GTX, Inc.,* No. 08-2852, 2009 WL 3839478, *3 (W.D. Term. Nov. 13, 2009) (recognizing that these are permissible areas of discovery "to obtain information necessary to explore the extent of the conflict of interest without being unduly burdensome"); *Crider v. Life Ins. Co. of N. Am.,* No. 3:07-cv-331,

2008 WL 239659, at *6 (W.D. Ky. Jan. 29, 2008) (permitting discovery concerning the financial

relationship between defendant and independent contractors it used in assessing plaintiff's

claim)). The Court found that this discovery "should be limited to those reviewers, vocational

professionals, and/or vendors who participated in plaintiff's claim." *Id.* at *6. Other courts in

the Sixth Circuit have allowed similar discovery on the issues of (1) whether there is a history of

biased claim denials, (2) whether the employer has taken measures to reduce bias and promote

accuracy, and whether company policies reward or encourage denials. *Myers*, 316 F.R.D. at 196

(citing *Kasko v. Aetna Life Ins. Co.*, 33 F. Supp.3d 782, 788 (E.D. Ky. 2014)). *See also Mulligan

v. Provident Life and Acc. Ins. Co.*, 271 F.R.D. 584, 589 (E.D. Tenn. 2011) ("[H]istorical

evidence of bias can put a thumb on the scale of the court's review only when it is 'suggest[ive]'

of bias in the particular claim. [*Glenn*, 554 U.S. 105 (2008)]. . . . Thus, a trial court may screen

discovery requests by considering the likelihood that the requested information will produce

evidence that the financial conflict motivated the decision at issue.").

Here, similar to *Sim*, the information plaintiff seeks on the financial relationship between

BCBS and MCMC, the vendor hired to review plaintiff's appeal[5], is relevant to the issue of bias

and should be discoverable. However, plaintiff's requests must be limited to information related

to Dr. Segal's review of claims for BCBS, and not for MCMC as an entity, as discovery should

be limited to the reviewers who participated in plaintiff's claim. *Sim*, 2016 WL 319868, at *6.

Plaintiff's request for discovery of this information is thus granted in part and denied in part.

### 9. *Interrogatory Nos. 12 & 13- Billing amount discrepancies*

Plaintiff seeks an explanation of the discrepancy among billing sheets and statements

showing the amount the health care provider charged for the medical services at issue. (Doc. 52-

---

[5] Following defendant's clarification that Dr. Segal, and not Dr. Hasiotis, was the reviewing physician on appeal, plaintiff acknowledged that Dr. Segal was hired by MCMC to review his appeal. (Doc. 60 at 1).

2 at 12). The amounts charged are variously listed as $41,034.00 (Doc. 26, PageID#: 1002); $43,988.00 (Doc. 26, PageID#: 988, 990, 994, 996, 1008, 1018); and $90,074.00 (Doc. 25, PageID#: 738). Plaintiff also asks for a citation to the Plan/Certificate of Insurance "that justifies the payment" of $43,988.00, an explanation for why the amount of $90,074.00 is not payable by BCBS for the services rendered, and a citation to the record where the justification for not paying this full amount can be found.

In cases where it is not clear what records a plan administrator has considered, courts sometimes allow discovery into "whether a complete administrative record has been assembled, whether any relevant material was not submitted to the Plan Administrator, and what was considered by the Plan Administrator." *Allen*, 933 F. Supp.2d at1025 (citing *Pediatric Special Care, Inc.,* 2011 WL 133038, *2; *Crosby,* 647 F.3d at 263). Here, it is unclear how BCBS calculated the outstanding claim amount, what records BCBS considered in determining that amount, and if all of the documents supporting the claim amount are included in the record. Plaintiff is entitled to discover information related to the amounts charged for the medical services at issue; the claim amounts that were submitted for each medical service and the amounts that were denied; and the reason for the discrepancy in the total charges that appear in the record. Defendant is directed to answer Interrogatory Nos. 12 and 13.

## B. Requests for Production of documents

### 1. Request Nos. 1& 3 - Grievance and appeal program policies and guidance

Plaintiff seeks in his first Request for Production all statements of policy or guidance regarding BCBS's grievance program, regardless of whether BCBS relied on the policy or guidance in making the benefit determination. (Doc. 52-2 at 13, citing Doc. 26 at PageID#: 898-904). Plaintiff argues as the basis for this discovery request that BCBS demonstrated bias and

26

caused prejudice by failing to process plaintiff's claim "consistent with the requirements of the Subscriber's Certificate Plan that distinguishes between an appeal of the denial and a grievance." (Doc. 52 at 12). Plaintiff contends that BCBS "consistently conflated" an appeal from a denial of a claim and a grievance, "causing confusion in nomenclature and procedures not only to [plaintiff] and internally within the organization itself." (*Id.*). Plaintiff's argument appears to be based on the April 22, 2016 denial letter authored by Abreu, which states it is in response to plaintiff's "grievance" received on March 24, 2016; that a board-certified physician had reviewed plaintiff's request for reconsideration of the denial and had denied coverage; and that BCBS's determination that plaintiff's claim fell outside the scope of coverage completed "the internal grievance process for this request." (Doc. 25 at PageID#: 773-776).

Defendant contends that the reference to a grievance in the letter is at most a clerical error and that the letter is clearly a denial of plaintiff's appeal submitted in March 2014. (Doc. 58-2 at 21-22). Defendant argues that the mistake is not evidence of bias which entitles plaintiff to discovery.

Plaintiff has not shown that evidence related to BCBS's grievance process is relevant to this case. Defendant acknowledges that the denial letter mistakenly referred to his appeal as a "grievance." Plaintiff has not explained how this mistake is evidence of bias. Nor has plaintiff shown that a mistaken reference to a "grievance" in the denial letter prejudiced him in any manner. Plaintiff is not entitled to discovery of documents that were not relied upon in processing his claim for benefits. *See Myers*, 316 F.R.D. at 209 (citing *Davis v. Hartford Life & Accident Ins. Co.*, No. 3:14-cv-00507-TBR, 2015 WL 7571905, *19 (W.D. Ky. Nov. 24, 2015)). Plaintiff's request for discovery related to the grievance process is denied.

In his third Request for Production, plaintiff seeks all statements of policy or guidance regarding BCBS's appeals program. (Doc. 52-2 at 13, citing Doc. 26 at PageID#: 898-904). Plaintiff has shown there is an issue as to whether defendant treated his claim differently because it is a "high dollar claim" and whether defendant violated Plan procedures by refusing to consider materials submitted by his attorney to appeal the claim denial. Plaintiff is entitled to discover any documents and information that govern the treatment of such claims and any other particular policy or guidance statements applicable to his claim. Defendant is directed to comply with Request for Production of Documents No. 3.

### 2. *Request No. 2 - Administrative procedures*

Plaintiff seeks "any document, record, or criteria that demonstrates compliance with the administrative processes and safeguards required pursuant to 29 C.F.R. § 2560.503-1(b)(5) in making the benefits determination, specifically any evidence or documents that shows [sic] that the claim procedures contain the administrative processes and safeguards designed to ensure and verify that the benefit claim determinations are made in accordance with the governing Plan documents and that where appropriate, the Plan provisions have been applied consistently with respect to similarly situated claimants." (Doc. 52-2 at 13).

Plaintiff's request is not narrowly tailored to the facts of this case insofar as plaintiff seeks to discover procedures that do not apply to his claims in addition to his own. To the extent plaintiff seeks information limited to the determination of his claim, his proposed request is relevant to the issue of bias. *See Austin-Conrad*, 2015 WL 4464103, at *5, *6 (recognizing these proposed discovery topics are relevant to the issue of bias and therefore discoverable); *Bird*, 2009 WL 3839478, at *3 (documentation of claims guidelines which the defendant consulted to adjudicate the plaintiff's claim was proper area of inquiry because the plaintiff needed the

information to explore the extent of the conflict of interest); *Hays*, 623 F. Supp.2d at 844 (permitting discovery "on [defendant's] history of claims administration, and on any steps taken by [defendant] to reduce potential bias or promote accuracy"). Further, plaintiff is entitled to any portion of the claims manual or other statements of guidance that defendants relied on in reviewing plaintiff's claim. *See Hatfield v. Life Ins. Co. of N. Am.*, No. 5:14-cv-432, 2015 WL 5722791, at *5 (E.D. Ky. Sept. 29, 2015) (granting motion to compel discovery of this information "[t]o the extent that [defendant] failed to include in the record any policies or procedures that it relied upon" in denying plaintiff's claim); *Austin-Conrad*, 2015 WL 4464103, at *6 (finding discovery of this information "reasonable," but limiting discovery "to those manuals or policies upon which [defendant] relied in determining [plaintiff's] disability claim"). Plaintiff's request is granted insofar as he seeks any document, record, or criteria that demonstrates compliance with the administrative processes and safeguards required to make the benefits determination in his case.

### 3. *Request No. 4 - Curriculum vitae*

Plaintiff requests the curriculum vitae of every medical expert who was consulted as part of the Plan determination, including Drs. Lewis and Segal, William Walsh, M.D., and Christos Hasiotis, M.D., regardless of whether defendant relied upon the expert's opinion. (Doc. 52-2 at 14). Courts have typically found information regarding the training and qualifications of the reviewers to be an improper area of inquiry, absent a further showing of relevance. *Bird*, 2009 WL 3839478, *3 (citing *Pemberton v. Reliance Stand. Life Ins. Co.*, CIV. A. 08-86-JBC, 2009 WL 89696, at *4 (E.D. Ky. Jan. 13, 2009)). Plaintiff has not explained how this information is likely to lead to evidence of bias or a due process violation. This document request is denied.

### 4. Request No. 5 - Documentation related to "high dollar cases"

Plaintiff requests documents related to the classification of a high dollar case, the definition of a high dollar case, the threshold limit for classifying a case in this category, and the BCBS criteria that support this classification, as required under 29 C.F.R. § 2560.503-1(b)(5). (Doc. 52-2 at 14). Plaintiff is entitled to this information for reasons explained earlier. Plaintiff is entitled to explore BCBS's reasons for designating his claim as a "high dollar claim." Discovery of documents related to the classification of his claim may shed light on whether BCBS had a policy of treating claims differently based on the value of the claims. Plaintiff's request for discovery of these documents is granted.

### 5. Request No. 6 - Documentation related to MCMC

Plaintiff asks BCBS to produce any contracts it had with MCMC during 2015 and all IRS Forms 1099 BCBS sent to MCMC during this time period. (Doc. 52-2 at 14). While documents relating to the financial relationship between BCBS and the reviewers who participated in plaintiff's claim are relevant, plaintiff's request here is too broad. The requested documentation is limited to the financial documents relating to services provided to BCBS during 2015 by Dr. Segal, the reviewer who participated in plaintiff's appeal.

### 6. Request No. 7 - Documentation related to billed services

Plaintiff asks BCBS to produce all documents that support the payment of less than $90,070.00 in billed charges for his treatment. (Doc. 52-2 at 14). Plaintiff's request is general and somewhat vague. Insofar as plaintiff seeks documents that explain the services billed, the amounts billed for the various services, and the total amounts charged, plaintiff is entitled to this documentation and his request is granted.

## C. Requests for Admission

Plaintiff has asked defendant to respond to five Requests for Admission. (Doc. 52-2 at 15). Defendant objects to each of the requests. The Requests for Admission and defendants' objections are as follows:

1. Please admit that [BCBS] has filed as documents filed at Doc. 25, PageID#: 798-811 were not provided to [plaintiff] in response to the letter and for the "Alkermes Healthcare Plan" made by [plaintiff's] counsel on July 25, 2016 that appears at Doc. #1-4, PageID#: 169 and again on August 5, 2016, Doc. 1-4, PageID#: 174.

Defendant responds that this request relates to communications between Mr. Canter's attorney and BCBS after BCBS's final coverage decision.

2. Please admit that the reviewing physician who was hired by MCMC when [BCBS] made a referral did not receive a copy of the [BCBS] medical technology assessment criteria that is referenced in the Plan/Certificate of Insurance, Doc. 26, PageID#: 837 and was not used in the review.

Defendant responds this request relates to communications between Mr. Canter's attorney and BCBS after BCBS's final coverage decision, seeks substantive discovery regarding the basis for BCBS's decision, can be answered through a cursory review of the AR, and it relates to extraneous matters that BCBS was not obligated to consider.

3. Please admit that the medical technology assessment criteria and the medical technology assessment criteria that is contained in the Plan/Certificate of Insurance at Doc. 26, PageID#: 837 were not used in the determination by the MCMC physician in his determination letter of March 14, 2016 (Doc. #25, PageID#: 704).

Defendant responds this request relates to communications between Mr. Canter's attorney and BCBS after BCBS's final coverage decision, seeks substantive discovery regarding the basis for BCBS's decision, and relates to extraneous matters it was not obligated to consider.

4. Please admit that the reviewing physician who was hired by MCMC when [BCBS] made a referral did not receive a copy of the [BCBS] medical necessity criteria that is referenced in the Plan/Certificate of Insurance and

contained at Doc. 26, PageID#: 838-39 for the determination of whether [plaintiff's] claim was medically necessary.

Defendant responds this request relates to communications between Mr. Canter's attorney and BCBS after BCBS's final coverage decision, seeks substantive discovery regarding the basis for BCBS's decision, and relates to extraneous matters it was not obligated to consider.

5. Please admit that the InterQual clinical criteria is not referenced in the Plan/Certificate filed by [BCBS] in Doc. 24-25.

Defendant responds this request relates to communications between Mr. Canter's attorney and BCBS after BCBS's final coverage decision and seeks substantive discovery regarding the basis for BCBS's decision.

Plaintiff has not adequately explained how his Requests for Admission relate to the issue of bias or a due process violation. Defendant is not required to answer the Requests for Admission.

## IT IS THEREFORE ORDERED THAT:

1. Defendant's motion to file a correction memorandum in response to plaintiff's motion to compel (Doc. 58) is **GRANTED**. The corrected memorandum (Doc. 58-2) is accepted for filing.

2. Plaintiff's motion to compel (Doc. 52) is **GRANTED** in part. In accordance with the terms of this Order, defendant shall respond to Interrogatory Nos. 1, 3, 4, 5, 8, 9, 10, 11, 12 and 13 and comply with plaintiff's Request for Production of Documents Nos. 2, 3, 5, 6 and 7. The motion to compel is **DENIED** in all other respects.

Date: _10/24/18_

_Karen L. Litkovitz_
Karen L. Litkovitz
United States Magistrate Judge