**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**KEITH W. CANTER,**

        **Plaintiff,**

    **v.**

**ALKERMES BLUE CARE ELECT**
**PREFERRED PROVIDER PLAN,**
**et al.,**

      **Defendants.**

         **Case No. 1:17-cv-399**
         **JUDGE DOUGLAS R. COLE**
         **Magistrate Judge Litkovitz**

### OPINION AND ORDER

This cause comes before the Court on Magistrate Judge Litkovitz's January 22, 2020, Report and Recommendation ("R&R") (Doc. 88). That R&R recommends that the Court grant in part and deny in part Plaintiff Keith W. Canter's Motion for Judgment on the Administrative Record (Doc. 69). The R&R also recommends the Court grant in part and deny in part Defendant Blue Cross and Blue Shield of Massachusetts, Inc.'s ("BCBSMA") Motion for Judgment on the Administrative Record (Doc 70). Finally, the R&R recommends that this matter be remanded to BCBSMA for a redetermination of Canter's benefit claim based upon a complete administrative record.

 BCBSMA filed its Objections (Doc. 90) on February 28, 2020. Canter filed an Opposition (Doc. 92), and BCBSMA filed a Reply (Doc. 94).

Also before the Court is Canter's Motion for Leave to file a sur-reply ("Motion to File Sur-Reply," Doc. 95). BCBSMA filed an Opposition to Canter's Motion (Doc. 96), and Canter filed a Reply (Doc. 97).

For the reasons stated more fully below, the Court **GRANTS** Canter's Motion for Leave to file a sur-reply (Doc. 95). Further, the Court **OVERRULES** BCBSMA's Objections (Doc. 90) and **ADOPTS** the R&R (Doc. 88). Accordingly, the Court **GRANTS** Canter's Motion for Judgment on the Administrative Record (Doc. 69) with respect to his procedural ERISA claims under 29 U.S.C. § 1133 and substantive ERISA claims under 29 U.S.C. § 1132(a)(1)(B) and **DENIES** his Motion in all other respects. The Court also **GRANTS** BCBSMA's Motion for Judgment on the Administrative Record (Doc. 70) with respect to Canter's 29 U.S.C. § 1132(c) claim and **DENIES** BCBSMA's Motion in all other respects. Finally, the Court **REMANDS** this matter to BCBSMA for reconsideration of Canter's claim for benefits based upon a complete administrative record.

## BACKGROUND

Canter was employed full-time at Alkermes, Inc. ("Alkermes") until July 6, 2015. (R&R, Doc. 88, #2404[1]). As part of his employment with Alkermes, Canter was a participant in the Alkermes Blue Care Elect Preferred Provider Plan (the "Plan"),[2] which is underwritten and insured by defendant BCBSMA. (*Id.*). Alkermes is the Plan administrator and BCBSMA is the claims administrator. (*Id.*).

Since August 2008, Canter has received treatment for hip, leg, and back pain. (R&R, Doc. 88, #2405). Originally, Canter received that treatment from Dr. Clifford

---

[1] Refers to Page ID #.
[2] Canter's Complaint also originally brought a claim against Alkermes Blue Care Elect Preferred Provider Plan. (Compl., Doc. 1). However, Canter dismissed the Plan as a defendant without prejudice on August 16, 2017. (Doc. 17). Accordingly, the sole remaining defendant is BCBSMA.

Valentin of Wellington Orthopaedic and Sports Medicine. (Canter Appeal, Doc. 25, #675–703). But, beginning in summer 2015, Canter began seeking treatment at the Laser Spine Institute ("LSI"). (LSI Statement, Doc. 25, #738). On July 1, 2015, Canter underwent an MRI and x-rays at LSI. (*Id.*). On July 2, 2015, in anticipation of surgery, Canter had a pre-operative visit with LSI's Dr. Raj Kakarlapudi. (R&R, Doc. 88, #2423). Shortly thereafter, on July 6, 2015, Canter returned to LSI, where Dr. Kakarlapudi performed a lumbar decompression and discectomy. (*Id.* at #2404).

After the surgery, Canter filed a claim with BCBSMA requesting coverage. (*Id.*). BCBSMA informed Canter that it would request his medical records, (R&R, Doc. 88, #2422), and subsequently contacted LSI to request records related to Canter's surgery. (*Id.*; Ltr. from BCBSMA to LSI, Doc. 26, #1008). When BCBSMA contacted LSI, however, it directed its record request only to the records from July 6, 2015—the date of Canter's actual surgery. (R&R, Doc. 88, #2423). As a result, it appears that LSI never sent BCBSMA records related to Canter's pre-operative visits, including records related to the MRI and x-rays taken on July 1, 2015. (*Id.*).

Subsequently, in a letter dated March 14, 2016, BCBSMA denied Canter's request for coverage. (*Id.* at #2404–05). The denial letter noted, in pertinent part:

> [y]ou are requesting coverage for bilateral transpedicular decompression and discectomy. We could not approve coverage of this service because you did not meet the medical necessity criteria for coverage of lumbar transpedicular decompression and discectomy. For coverage, there must be documentation of [] your symptoms, physical findings, imaging results, and specific non-operative therapies including anti-inflammatory medications, activity modification, and either a supervised home exercise program or physical therapy. Imaging must contain neural compression or a diagnosis made on electromyography, nerve conduction studies. The criteria used to guide this decision were

3

> InterQual® Smartsheet™ Hemilaminectomy, Lumbar +/-
> Discectomy/Foraminotomy.

(*Id.* at #2405 (quoting Mar. 2016 Denial Ltr., Doc. 25, #704)). The letter indicated that Canter had the right to appeal the decision. Also enclosed was a copy of the InterQual Smartsheet criteria[3] referenced in the letter as well as a "Fact Sheet" explaining BCBSMA's review and appeal procedures. (*Id.*).

On March 24, 2016, Canter submitted a pro se appeal to BCBSMA via email. (*Id.*). In support of his appeal, Canter wrote a letter and submitted various medical records related to his treatment with Dr. Valentin. (*Id.* at #2405). However, Canter did not submit any records from LSI with his appeal. (Canter Appeal, Doc. 25, #675–703).

BCBSMA referred Canter's appeal to an independent review company, MCMC, who selected Dr. David H. Segal, a board-certified neurological surgeon, to conduct the review. (*Id.* at #2408). Based on Dr. Segal's review, BCBSMA denied Canter's appeal, explaining that Canter

> did not meet the medical necessity criteria required for coverage of
> lumbar hemilaminectomy and placement of percutaneous nerve
> stimulator motor unit because there [was] no documented motor or
> sensory deficit, weakness, documented nerve root compression on
> imaging studies or worsening motor deficit. There [was] also no
> documentation of failure of physical therapy home exercise or activity
> modification …. The requested service [was] not medically necessary for
> the Member's condition based on the failure to meet the provided
> InterQual guidelines.

(Apr. 2016 Denial Ltr., Doc. 25, #773–74).

---

[3] The R&R describes the InterQual criteria as "nationally recognized, third-party guidelines." (Doc. 88, #2436 (quoting *Stephanie C. v. Blue Cross Blue Shield of Massachusetts, Inc.*, 813 F.3d 420 (1st Cir. 2016))).

Canter then contacted Kelly Bryant, an employee in Alkermes' human resources department, for assistance. (Email from K. Bryant to K. Canter, Doc. 1-4, #166). Bryant, in turn, contacted a representative at BCBSMA, who stated:

> I do see that Keith [Canter] has a surgical claim denied on 7/6/2015. It [was] denied because we required medical records and an itemized bill. I see that information was received; however, the documentation provided did not show medical necessity. A grievance was submitted and denied. This is a high dollar claim with an out of network provider. There was no authorization on file at the time of services. It looks as though they tried to obtain an authorization after the fact (on 3/3/16). That was denied because the member did not meet the criteria for surgery based on the medical records.

(R&R, Doc. 88, #2411 (quoting Email from K. Bryant to K. Canter, Doc. 1-4, #166)). After receiving this communication from BCBSMA, Bryant responded to Canter's inquiry and explained, in pertinent part, that "[a]t this point, [BCBSMA] have advised that there is nothing else they can do on their end and that you are eligible to file a second and final grievance." (R&R, Doc. 88, #2411).

Canter then retained counsel, and on November 23, 2016, he filed a second request to appeal the denial of his claim. (*Id.* at #2411–12). BCBSMA never responded to this second appeal letter, and on March 15, 2017, Canter's counsel sent another letter stating that BCBSMA had until April 3, 2017, to respond, or else Canter would assume he had exhausted all administrative remedies. (*Id.* at #2413). BCBSMA never responded. (*Id.*).

On June 12, 2017, Canter initiated this lawsuit, bringing three separate ERISA claims against BCBSMA. (Compl., Doc. 1). First, Canter alleges that BCBSMA violated his procedural rights under 29 U.S.C. § 1133 by failing to provide

adequate notice when it denied his claim; failing to process his second appeal; and relying on the opinion of Dr. Segal, who Canter alleges was incompetent to review his claim.

Second, Canter alleges that BCBSMA improperly denied him benefits due under the terms of his plan in violation of 29 U.S.C. § 1132(a)(1)(b) because BCBSMA substituted an outside document, the InterQual criteria, in lieu of applying the Plan language, and denied his claim without adequate factual substantiation. Canter also alleges that BCBSMA had a conflict of interest because it improperly categorized his request as a "high dollar claim."[4]

Third, Canter alleges that BCBSMA is liable under 29 U.S.C. § 1132(c)(1) because it failed to produce the entire Plan with the Schedule of Benefits and other relevant sections when Canter requested it.

Canter moved for Judgment on the Administrative Record (Doc. 69) on February 28, 2019; BCBSMA did likewise on March 1, 2019 (*see* Doc. 70). After both Motions were fully briefed, the Magistrate Judge issued the R&R. (Doc. 88).

The R&R found that BCBSMA had violated Canter's procedural rights under 29 U.S.C. § 1133 by failing to provide adequate notice when it denied his claim and by failing to process his second appeal. The R&R also found that BCBSMA had violated 29 USC § 1132(a)(1)(B) by denying Canter's claim without adequate factual

---

[4] Canter's Complaint also originally described a claim against BCBSMA for breach of fiduciary duty under 29 U.S.C § 1104(a)(1). (Compl., Doc. 1, #12). However, Canter later clarified that "his breach of fiduciary duty claims are subsumed in his claim for payment of benefits under 29 U.S.C. 1132(a)(1)(b)." (R&R, Doc. 88, #2444). Therefore, the R&R concluded that "it need not address such claim separately to the extent such claim exists." (*Id.*).

substantiation and by relying exclusively on the InterQual criteria in reaching its decision. Accordingly, the R&R recommended that this matter be remanded to BCBSMA for a redetermination of Canter's claim for benefits based on a complete administrative record. (Doc. 88, #2443–44). Finally, the R&R dismissed Canter's claim under 29 U.S.C. § 1132(c)(1) alleging that BCBSMA had failed to provide a copy of the Plan upon request, because Canter "states he is not requesting penalties under 29 U.S.C. § 1132(c)(1) against BCBSMA." (*Id.* at #2444).

BCBSMA filed its Objections to the R&R (Doc. 90) on February 28, 2020, arguing that the R&R improperly concluded that BCBSMA (1) had violated Canter's procedural rights under 29 U.S.C. § 1133, and (2) had incorrectly denied Plan benefits to Canter under 29 USC § 1132(a)(1)(B). Canter filed an Opposition to BCBSMA's Objections (Doc. 92), and BCBSMA filed a Reply (Doc. 94).[5]

Canter has also moved for leave to file a sur-reply in opposition to BCBSMA's Objections. (Doc. 95). That Motion has also been fully briefed. (Doc. 96; Doc. 97), and the Court begins its discussion there.

### CANTER'S MOTION FOR LEAVE TO FILE A SUR-REPLY

As an initial matter, the Court must determine whether it can consider Canter's proposed Sur-Reply. (Doc. 95-1). Although local rules generally do not permit parties to file sur-reply briefs, a party may request leave of the Court to do so upon a showing of good cause. S.D. Ohio Civ. R. 7.2(a)(2). As this Court has previously

---

[5] Canter has not objected to the R&R's recommendation that the Court grant BCBSMA judgment on the administrative record on his claim for failure to produce a copy of the Plan upon request under 29 U.S.C. § 1132(c)(1). Seeing no clear error in the Magistrate Judge's conclusion, the Court adopts that recommendation here.

explained, "[g]enerally, 'good cause' exists where the reply brief raises new grounds that were not included in [the] movant's initial motion"—or, in this case, BCBSMA's initial Objections. *NCMIC Ins. Co. v. Smith*, 375 F. Supp. 3d 831, 835–36 (S.D. Ohio 2019) (internal citations omitted). "Good cause for a sur-reply also exists where a party seeks to 'clarify misstatements' contained in the reply brief." *Id.* (citations omitted).

Here, Canter argues that a sur-reply is appropriate because he seeks to "clarify misstatements" in BCBSMA's Objections and Reply—specifically, BCBSMA's allegedly "conclusory statement about the applicable standard of review." (Reply in Supp. of Mot. to File Sur-Reply, Doc. 97, #2539). Without deciding the merits of Canter's underlying arguments as to the appropriate standard of review (a subject the Court turns to in the next section), the Court finds Canter's argument persuasive insofar as he argues a sur-reply is necessary to clarify an alleged misstatement.

In granting Canter's Motion to File a Sur-Reply, the Court also notes that BCBSMA erred in filing a Reply in support of its Objections in the first instance, as Fed. R. Civ. P. 72(b)(2) does not provide for a reply-round of briefing on objections to an R&R. *Hendricks v. Hazzard,* No. 2:11-cv-399, 2013 WL 571846, at *1 (S.D. Ohio Feb. 13, 2013). That said, Canter did not move to strike the Reply, and thus the Court will consider BCBSMA's Reply in ruling on its Objections. However, because Rule 72(b)(2) contemplates that the non-objecting party should have the final word in briefing, that is a further basis supporting good cause to consider Canter's proposed Sur-Reply.

Accordingly, the Court **GRANTS** Canter's Motion for Leave to file a sur-reply (Doc. 95) and considers the arguments in Canter's Sur-Reply in reaching its conclusions below.

## BCBSMA'S OBJECTIONS TO THE R&R

Next, the Court turns to BCBSMA's Objections to the R&R. (Doc. 90). The parties disagree on multiple issues. First, BCBSMA and Canter dispute which standard of review the Court should apply in evaluating the R&R. Second, the parties disagree as to whether the R&R properly concluded that BCBSMA violated Canter's procedural rights under 29 U.S.C. § 1133. Finally, the parties disagree as to the R&R's conclusion that BCBSMA incorrectly denied Canter's benefit claim under 29 U.S.C. § 1132(a)(1)(b). The Court addresses each of these issues in turn.

**A.     The Court Reviews De Novo The Portions Of The R&R To Which BCBSMA Properly Objected.**

The parties dispute what standard of review the Court should apply in deciding whether to adopt the R&R. BCBSMA argues that the Court should review the R&R de novo with respect to "those portions of the report or specified proposed findings or recommendations to which objection is made." (Reply, Doc. 94, #2504 (citing *Render v. Warden, S. Ohio Corr. Facility,* 889 F. Supp. 2d 1014, 1019 (S.D. Ohio 2012)). Canter, on the other hand, argues that because the Magistrate Judge's recommendation to remand is not dispositive, the R&R should instead be reviewed under the more lenient "clearly erroneous or contrary to law" standard as required under Fed. R. Civ. P. 72(a). (Sur-Reply, Doc. 95-1, #2519).

In determining which standard of review to apply in adopting a Magistrate Judge's findings, the "threshold issue" is whether the motion in question is dispositive. (*Id.* at #2518). As the Sixth Circuit has explained, under Fed. R. Civ. P. 72, "[a] district court normally applies a 'clearly erroneous or contrary to law' standard of review for nondispositive preliminary measures. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). A district court must review dispositive motions under the de novo standard. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)." *Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003).

Canter, though, is incorrect that the Motions at issue here are "non-dispositive" for the purposes of Rule 72. Canter reaches this incorrect conclusion by conflating the "dispositive" inquiry with the "final appealable order" inquiry appellate courts use to determine whether a matter is ripe for appellate review. (*Id.* at #2522 (arguing that "a district court's order remanding an ERISA claim to the plan administrator [is] not a final and appealable decision") (quoting *Laake v. Benefits Committee,* 793 F. App'x 413, 414 (6th Cir. 2019))). These are separate inquiries. Indeed, by Canter's logic, a Magistrate Judge's R&R denying summary judgment would not be considered dispositive because such findings would ordinarily not be eligible for appellate review. That is plainly incorrect. *See, e.g., Turner v. Ohio Dep't of Rehab. & Corr.*, No. 2:19-cv-2376, 2021 WL 3486328, at *1 (S.D. Ohio Aug. 9, 2021) (reviewing an R&R recommending summary judgment be denied de novo); *Fugate v. Erdos*, No. 1:19-cv-30, 2021 WL 4437473, at *1 (S.D. Ohio Sept. 28, 2021) (same); *Brevaldo v.*

*Muskingum Cnty. Sheriff's Office*, No. 2:18-cv-446, 2020 WL 6536475, at *1 (S.D. Ohio Nov. 6, 2020) (same).

Moreover, this Court has repeatedly applied a de novo standard of review when a Magistrate Judge issues an R&R on a party's motion for judgment on the administrative record. *See, e.g., Jones v. Allen*, No. 2:11-cv-380, 2013 WL 4455833, at *4 (S.D. Ohio Aug. 16, 2013); *Mattingly v. Humana Health Plan, Inc.*, No. 1:15-cv-781, 2018 WL 5619947, at *1 (S.D. Ohio Aug. 22, 2018); *Cole v. Robbins & Myers, Inc.*, 3:09cv191, 2010 WL 3909474, at *3 (S.D. Ohio Sept. 30, 2010). This includes R&Rs where the Magistrate Judge recommends that a claim for improperly denied ERISA-plan benefits be remanded to the plan administrator for reconsideration. *See, e.g., Dirkes v. Hartford Life Group Ins. Co.*, No. 1:05-cv-254, 2008 WL 2788059, at *2 (S.D. Ohio July 15, 2008). Because this Court has repeatedly held that motions for judgment on the administrative record are dispositive for the purposes of Rule 72, and Canter has offered no persuasive reason to depart from this practice, the Court finds a de novo standard of review applies.

Accordingly, the Court conducts its review de novo under Fed. R. Civ. P. 72(b)(3). This review, however, applies only to "any portion to which a proper objection was made." *Richards v. Colvin*, No. 2:12-cv-748, 2013 WL 5487045, at *1 (S.D. Ohio Sept. 30, 2013). In response to such an objection, "[t]he district court 'may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.'" *Id.* (quoting Fed. R. Civ. P. 72(b)(3)). A general objection, by contrast, "has the same effect[] as would a

failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *Boyd v. United States*, No. 1:16-cv-802, 2017 WL 680634, at *1 (S.D. Ohio Feb. 21, 2017). That is, a litigant must identify each issue in the R&R to which he objects with sufficient clarity that the Court can identify it, or else that issue is deemed waived. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

## B.  BCBSMA Violated Canter's Procedural Rights Under 29 U.S.C. § 1133.

Canter brings a claim for violation of ERISA's procedural protections under 29 U.S.C. § 1133. As the Sixth Circuit has explained, in evaluating § 1133 claims, the "question of whether the procedure employed by the fiduciary in denying the claim meets the requirements of Section 1133 is a legal question which [the Court] must review de novo." *Moore v. Metro. Life Ins. Co.,* No. 18-5325, 2019 WL 1499337, at *3 (6th Cir. Jan. 3, 2019) (quoting *Kent v. United of Omaha Life Ins.*, 96 F.3d 803, 806 (6th Cir. 1996)). Moreover, "[i]n reviewing a procedural claim, a court may consider evidence outside the administrative record." *Id.* (citing *VanderKlok v. Provident Life & Accident Ins.*, 956 F.2d 610, 617 (6th Cir. 1992)).

Section 1133 provides that an employee benefit plan must: "(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," and "(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied

for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133.

As the Sixth Circuit has explained, "[t]he 'essential purpose' of [§ 1133] is twofold: (1) to notify the claimant of the specific reasons for a claim denial, and (2) to provide the claimant an opportunity to have that decision reviewed by the fiduciary." *Wenner v. Sun Life Assur. Co. of Canada*, 482 F.3d 878, 882 (6th Cir. 2007) (emphases omitted). In evaluating whether § 1133's notice requirements have been met, the Sixth Circuit applies the "substantial compliance" test. *Id.* Under that test, the Court "considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances. If the communications between the administrator and participant as a whole fulfill the twin purposes of § 1133, the administrator's decision will be upheld even where the particular communication does not meet those requirements." *Id.* (internal quotation marks and citations omitted).

If the Court finds that an administrator has failed to substantially comply with § 1133's requirements, then it may remand the matter to the administrator for reconsideration on a complete administrative record. *Smith v. Health Servs. of Coshocton*, 314 F. App'x 848, 856–57 (6th Cir. 2009). However, "remand is not required if it would represent a useless formality. Pursuant to Sixth Circuit case law, remand represents a useless formality if the plan administrator provides at least one reasonable basis for the denial of benefits, even if two different and independent reasons are given for the denial." *Id.* (internal citations and quotation marks omitted).

In this case, the Magistrate Judge found that BCBSMA had violated Canter's rights under § 1133 in two ways. First, the R&R found that BCBSMA's March 2016 denial letter was inadequate under § 1133(1), because (1) it failed to describe what information was necessary for Canter to perfect his claim and why such material was necessary, (2) it did not notify Canter of the evidence BCBSMA relied upon in reaching its decision, and (3) it did not discuss the Plan terms defining medical necessity. (R&R, Doc. 88, #2417–24). Second, the R&R found that BCBSMA failed to afford Canter a full and fair review under § 1133(2) by refusing to process his second appeal after BCBSMA's agent informed Canter that a second appeal was permitted. (*Id.* at #2424–28). Moreover, because the R&R concluded that remand would not be a "useless formality," it recommended that the case be remanded back to BCBSMA for further review. (*Id.* at #2445). BCBSMA objects to each of these findings by the Magistrate Judge, and the Court turns to its specific arguments below.

### 1. BCBSMA's Denial Letter Was Inadequate.

BCBSMA's March 2016 denial letter to Canter stated, in pertinent part:

[y]ou are requesting coverage for bilateral transpedicular decompression and discectomy. We could not approve coverage of this service because you did not meet the medical necessity criteria for coverage of lumbar transpedicular decompression and discectomy. For coverage, there must be documentation of [] your symptoms, physical findings, imaging results, and specific non-operative therapies including anti-inflammatory medications, activity modification, and either a supervised home exercise program or physical therapy. Imaging must contain neural compression or a diagnosis made on electromyography, nerve conduction studies. The criteria used to guide this decision were InterQual® Smartsheet™ Hemilaminectomy, Lumbar +/- Discectomy/Foraminotomy.

(R&R, Doc. 88, #2405 (quoting Mar. 2016 Denial Ltr., Doc. 25, #704)). The R&R found that the March 2016 denial letter violated § 1133(1)'s procedural protections for three reasons. First, the R&R found that the denial letter failed to describe what information was necessary for Canter to perfect his claim and why such information was necessary. Second, the R&R found that the letter failed to notify Canter of the evidence that BCBSMA relied upon in reaching its decision. And third, the R&R found that the letter was procedurally inadequate because it failed to make reference to the relevant Plan terms upon which BCBSMA's decision was based. BCSMA objects to each of these findings.

> ### a. *The Denial Letter Failed To Explain What Additional Information Was Necessary For Canter To Perfect His Claim.*

First, the R&R found that the denial letter violated § 1133(1) because it "fail[ed] to advise [Canter] how his medical records and information fell short of meeting the medical necessity definition of the Plan, including the InterQual criteria." (R&R, Doc. 88, #2419). In response, BCBSMA argues that its denial letter was satisfactory, because it "informed [Canter] what was required for coverage." (Obj., Doc. 90, #2455). In particular, BCBSMA notes that its letter explicitly informed Canter that, in order to meet the definition of medical necessity, "there must be documentation of your symptoms, physical findings, imaging results, and specific non-operative therapies including anti-inflammatory medications, activity modification, and either a supervised home exercise program or physical therapy. Imaging must confirm neural compression or a diagnosis made on electromyography, nerve conduction studies." (*Id*.).

BCBSMA's argument is unavailing. Although BCBSMA is correct that its letter informed Canter of what information is required for coverage, it errs in arguing that this suffices to meet § 1133's requirements. In reaching the conclusion that the denial letter fell short, the R&R relied on the implementing regulations for § 1133. These regulations state that, in denying a claim, the administrator must provide "the specific reason for the determination" and a "description of any *additional* material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 CFR § 2560.503-1(g)(1) (emphasis added). BCBSMA's letter, by contrast, simply informed Canter of *all* the information that he needed to meet the definition of medical necessity, without explaining which requirements, if any, he had already satisfied and which remained outstanding. Thus, BCBSMA failed to satisfy the implementing regulation's requirement that it inform Canter of what "*additional* material … [was] necessary to perfect [his] claim." *Id.* (emphasis added). Because BCBSMA did not explain what additional information was necessary, the Court finds its March 2016 denial letter was inadequate.[6]

---

[6] In its Objections, BCBSMA argues that courts "have narrowly interpreted [29 C.F.R. § 2560.503-1(g)(1)(iii)] as requiring the plan administrator to tell a claimant what additional information must be supplied to bring the claim to completion, not what additional information is needed to win." (Obj., Doc. 90, #2455 (quoting *Myers v. Bricklayers & Masons Local 22 Pension Plan*, No. 3:13-cv-75, 2014 WL 3530962, at *4 (S.D. Ohio July 14, 2014)). But even if the implementing regulations are interpreted narrowly, BCBSMA still appears to concede that the regulations require the administrator to explain "what additional information must be supplied to bring the claim to completion"—which BCBSMA's March 2016 letter failed to do.

> b.  *BCBSMA'S Denial Letter Failed To Advise Canter Of The Evidence Relied Upon In Reaching Its Decision.*

Next, the R&R rejected BCBSMA's March 2016 denial letter as procedurally inadequate because it "failed to notify [Canter] of the evidence it relied on and that its decision was based on an incomplete record." (Doc. 88, #2422). In particular, the R&R found that, even though BCBSMA repeatedly advised Canter that it had requested his medical records from LSI, the records request BCBSMA sent to LSI was "specifically limited to the date range of 'July 6, 2015 to July 6, 2015,' the date of [Canter's] actual surgery." (*Id.* at #2422–23). Moreover, BCBSMA compounded this issue by failing to advise Canter of what evidence it relied upon in reaching its decision, thus making it difficult for Canter to realize that BCBSMA's prior representations that it had requested the relevant records from LSI were—in fact— not entirely correct. (*Id.* at #2422).

BCBSMA's Objections on this point are somewhat confusing. BCBSMA first argues that, although its records request appeared to limit the date range to the day of Canter's actual surgery, "this records request is effectively a request for 'complete medical records' related to the Procedure in Laser Spine Institute's possession, because it includes records related to the pre-operative visits referenced in the R&R." (Obj., Doc. 90, #2456). However, the preoperative x-rays and MRIs are not in the administrative record. (R&R, Doc. 88, #2423). Thus, BCBSMA seems to argue that it effectively requested Canter's complete records from LSI—and if any documents are missing from the administrative record, then, it was because LSI failed to properly deliver them as BCBSMA requested. BCBSMA, though, offers no support for its

argument that a records request specifically limited to the date of Canter's surgery should have actually been interpreted as a request for all Canter's relevant records from LSI. Accordingly, the Court rejects this argument.

BCBSMA next argues that, even if it failed to request all the relevant records from LSI, "[r]egardless, after receiving BCBSMA's claim denial, [Canter] and Laser Spine Institute were plainly on notice that … the medical records submitted did not satisfy the InterQual criteria and … additional records" were necessary. (Obj., Doc. 90, #2456). But this argument disregards the Magistrate Judge's legal finding that "[t]he persistent core requirements of review intended to be full and fair [under § 1133] include knowing what evidence the decision-making relied upon." (R&R, Doc. 88, #2422 (quoting *Zack v. McLaren Health Advantage, Inc.*, 340 F. Supp. 3d 648, 662-63 (E.D. Mich. 2018))). While BCBSMA does not directly contend that there is no such requirement, it makes this argument implicitly by suggesting that its responsibilities under § 1133 were satisfied merely by telling Canter that the administrative record, as it currently stood, was not sufficient to approve his claim, even though BCBSMA did not inform him what was in the record, or why it fell short. But BCBSMA offers no compelling case law to support this argument.[7] For that

---

[7] To its credit, BCBSMA does cite to one case, *Boone v. Liberty Life Assur. Co.*, 161 F. App'x 469 (6th Cir. 2005), where it states that the Sixth Circuit "[found] that an ERISA claimant was not prejudiced even though 'Liberty's reason for initially denying benefits (a failure to provide sufficient medical data) was indeed different from its later decision to uphold the denial of benefits (an absence of objective medical evidence establish disability).'" (Obj., Doc. 90, #2456–57 (quoting *Boone,* 161 F. App'x at 474)). BCBSMA does not fully explain, however, how it believes *Boone* applies to the instant case.

reason, the Court rejects BCBSMA's argument that its March 2016 denial letter satisfied § 1133's evidentiary disclosure requirements.

>    c.    *The Court Need Not Decide Whether BCBSMA's Denial Letter Adequately Referenced The Specific Plan Provisions On Which Its Determination Was Based.*

Finally, the R&R found that the denial letter was procedurally inadequate because it violated 29 CFR § 2560.503-1(g)(1)(ii), which required the letter to reference "the specific plan provisions on which [its] determination [was] based." (*See* R&R, Doc. 88, #2417, 2420). BCBSMA objects to this conclusion. (Doc. 90, #2457). However, because the Court finds that, even if BCBSMA were correct that it satisfied the requirements of 29 CFR § 2560.503-1(g)(1)(ii), its denial letter would still have failed to substantially comply with § 1133 for the reasons already discussed, the Court need not reach the merits of BCBSMA's objections on this issue.

>    **2.    BCBSMA Was Required To Process Canter's Second Appeal.**

BCBSMA also objects to the R&R's conclusion that BCBSMA violated § 1133's procedural protections by failing to review Canter's second appeal.

As an initial matter, the R&R and BCBSMA both seem to agree that the Plan, by its terms, ordinarily only contemplates a single appeal of a claim denial. (R&R, Doc. 88, #2425; Obj., Doc. 90, #2458). But the R&R found that this was not an ordinary case, because after Canter received the March 2016 denial letter, he contacted Bryant, Alkermes' HR representative, who informed him in writing that he was "eligible to file a second and final grievance." (R&R, Doc. 88, #2411 (quoting email from K. Bryant to K. Canter, Doc. 1-4, #166)).

19

Although Bryant did not work for BCBSMA, the R&R found that she was BCBSMA's agent on the basis of apparent authority. (*Id.* at #2427). More specifically, the R&R pointed to the Fact Sheet BCBSMA provided Canter when it denied his first appeal in March 2016, which stated—in a section entitled "a member's right to appeal"—that "[m]embers who live outside of Massachusetts may have other rights based on laws based in their home state. Members should check with their employer's benefit office for more information." (R&R, Doc. 88, #2427). In directing Canter to contact Bryant to discuss his appeal rights, BCBSMA clothed Bryant with apparent authority to answer Canter's questions on that front. And there is no question that Bryant represented to Canter that a second appeal was permitted.[8] It is also clear that Canter relied on this representation to his detriment because, by filing a second appeal, Canter "forfeited his right to an external review [with the Commonwealth of Massachusetts Health Policy Commission's Office of Patient Protection] and the opportunity to present additional evidence into the administrative record." (*Id.* at #2426). In short, given Bryant's apparent authority, Canter reasonably relied on her representations that a second appeal was permitted, and thus the R&R properly concluded that BCBSMA was obligated to process his second appeal.

---

[8] BCBSMA argues that Canter should not have understood Bryant's email to mean he was entitled to file a second appeal because the email also stated that BCBSMA had advised "there is nothing else they can do on their end." (Obj., Doc. 90, #2459 (quoting Email from K. Bryant to K. Canter, Doc. 1-4, #166)). But BCBSMA takes this statement out of context. The full sentence in the email stated that "[a]t this point, [BCBSMA] have advised that there is nothing else they can do on their end *and that you are eligible to file a second and final grievance*." (Email from K. Bryant to K. Canter, Doc. 1-4, #166 (emphasis added)). Thus, Bryant's email clearly represented to Canter that a second appeal was permitted.

20

BCBSMA claims otherwise on two grounds. First, BCBSMA argues that Bryant did not have apparent authority. That is so, BCBSMA argues, because "[t]he portion of the Fact Sheet cited by the R&R relates to *external review*, not internal appeals to BCBSMA; specifically, it advises Members who live outside of Massachusetts to check with their employer because they may have additional rights with respect to external review." (Obj., Doc. 90, #2460). Thus, BCBSMA argues, the Fact Sheet did "not give Ms. Bryant actual authority to speak on BCBSMA's behalf with respect to internal BCBSMA appeals." (*Id.*).

Two problems with that. First, the R&R does not suggest that the Fact Sheet gave Bryant "actual authority." Rather, her actual authority, if any, springs from the "Premium Account Agreement," as BCBSMA notes. (*Id.*). The question here, though, is Bryant's *apparent* authority. Bryant's actual authority is largely irrelevant to that question.

Second, BCBSMA errs in its understanding of apparent authority. To be sure, BCBSMA gets the legal standard right in its Objections. There, BCBSMA explains that "[a]pparent authority is the power held by an agent … when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." (Obj., Doc. 90, #2460 (quoting Restatement (Third) of Agency § 2.02)). But when BCBSMA goes to apply that standard on the facts here, its argument runs off the tracks.

For example, on the "reasonably believes" front, BCBSMA argues that Canter's reliance on Bryant's representations was unreasonable, because—BCBSMA

maintains—the Fact Sheet only granted Bryant authority with respect to *external* review, not all possible avenues of review. Having reviewed the Fact Sheet, the Court cannot agree. While BCBSMA's Objections do not clearly explain the textual basis for this argument, the argument appears to be based on the fact that the relevant sentence in the Fact Sheet granting Bryant authority directly followed a paragraph describing the procedures for external review. (Fact Sheet, Doc. 25, #707–08). If that is indeed BCBSMA's argument, the Court rejects it. To be sure, had the sentence granting Bryant authority been in the *same* paragraph as the paragraph describing the procedures for external review, then BCBSMA's argument might have some heft. But here, the relevant sentence conferring authority on Bryant was a freestanding paragraph with no apparent relationship to the one preceding it. Nothing in the relevant sentence suggests that the authority it confers on Bryant is limited to external review—rather, it states in broad terms that "[m]embers who live outside of Massachusetts may have other rights." As this section of the Fact Sheet is directed at appeal rights generally, the reference to "other rights" suggests that Bryant had authority to speak with regard to *any* avenues of review available to Canter, not only the right to external review. Accordingly, based on the plain terms of BCBSMA's own Fact Sheet, Canter "reasonably believe[d]" that Bryant was empowered to act as BCBSMA's agent for the purposes of identifying the avenues of appeal open to him as a non-Massachusetts resident. (*See* Obj., Doc. 90, #2460).

BCBSMA next argues that, even if Bryant was its agent, Canter could not have reasonably relied on her representations regarding the availability of a second

appeal. This is because the Plan documents were clear that only one appeal was available, and "reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plans documents available to or furnished to the party." (*Id.* at #2459 (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010))).

The problem for BCBSMA on this argument, though, is that Bryant's representation that a second appeal was available was consistent with the Plan documents that had been furnished to Canter. The Fact Sheet specifically said that, because Canter was a non-Massachusetts resident, he "may have *other* rights based on laws passed in [his] home state" and that he should "check with [his] employer's benefit office for more information." (Fact Sheet, Doc. 25, #708 (emphasis added)). Whether a second appeal is available under Ohio law would seem to be exactly the kind of "other right" that the Fact Sheet contemplates here—and thus BCBSMA's argument that Bryant's representations directly contradicted the Plan documents are without merit.

### 3.    Remand Would Not Be A Useless Formality.

BCBSMA next argues that, even if it violated Canter's procedural rights under § 1133, the R&R's recommendation that this matter be remanded is incorrect because doing so would be a useless formality.

The R&R found that remand would not be a useless formality because "the contemporaneous MRI and clinical evidence from the Laser Spine Institute that BCBSMA failed to request would likely support" Canter's argument that his

procedure was medically necessary. (Doc. 88, #2428). In response, BCBSMA—somewhat cryptically—argues that "[r]emand is a useless formality here because … the Procedure was not medically necessary based on the evidence submitted during the administrative process." (Obj., Doc. 90, #2457).

BCBSMA's argument, though, fails to directly confront the issue at hand. Even if Canter's procedure was not medically necessary "based on the evidence submitted during the administrative process," the R&R found that important evidence was *not* submitted during the administrative process as a result of BCBSMA's procedural failures. When this missing evidence is considered, it may (or may not) shift the needle and reveal that Canter's procedure was—in fact—medically necessary. Accordingly, the Court rejects BCBSMA's argument that remand is inappropriate in this case as a useless formality.

## C. BCBSMA Incorrectly Denied Canter's Benefit Claim Under 29 U.S.C. § 1132(a)(1)(b).

BCBSMA also objects to the R&R's findings regarding Canter's substantive ERISA claims. Under 29 U.S.C. § 1132(a)(1)(B), an ERISA plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." In this case, the R&R found that BCBSMA erroneously denied Canter ERISA benefits because it "improperly interpreted the terms of the Plan by limiting the medical necessity inquiry to whether [Canter] satisfied the InterQual criteria," (Doc. 88, #2438), and accordingly

recommended that the matter be remanded to the plan administrator for further proceedings. (*Id.* at #2443).

BCBSMA argues that the R&R erred by incorrectly applying a de novo standard of review to BCBSMA's decision to deny benefits, instead of an arbitrary and capricious standard. (Obj., Doc. 90, #2463). However, BCBSMA also maintains that under either standard of review, the R&R should have concluded that BCBSMA's decision to deny benefits to Canter was correct. (*Id.* at #2463–68). The Court addresses each of these objections in turn.

### 1.    The Appropriate Standard of Review Is De Novo.

As the Sixth Circuit recently observed, "[a] federal court considering [a § 1132(a)(1)(B)] claim starts with the presumption that it should review the administrator's denial of benefits de novo. If, however, the terms of the plan give the administrator discretionary power to make benefits decisions, the court reviews the administrator's denial under a deferential arbitrary-and-capricious standard." *Card v. Principal Life Ins. Co.,* 17 F.4th 620, 624 (6th Cir. 2021) (internal citations omitted). In determining whether the terms of a given plan grant the administrator discretionary authority, the Sixth Circuit has also stated that, "[a]lthough 'magic words' are not required, this Court has 'consistently required that a plan contain a *clear* grant of discretion' to the administrator or fiduciary before applying the deferential arbitrary and capricious standard." *Frazier v. Life Ins. Co. of N. Am.,* 725 F.3d 560, 566 (6th Cir. 2013) (quoting *Perez v. Aetna Life. Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998)).

In this case, the R&R observed that the operative Subscriber Certificate in effect at the time of Canter's surgery stated that "*Blue Cross and Blue Shield* decides which health care services and supplies that you receive (or you are planning to receive) are medically necessary and appropriate for coverage." (R&R, Doc. 88, #2431 (quoting Subscriber Certificate, Doc. 77-2, #1655) (emphasis in original)). Based, in part, on the fact that the First Circuit had previously "applied a de novo standard of review based on identical Plan language," the R&R concluded that the terms of the Plan did "not clearly grant discretion to BCBSMA to construe Plan terms and make eligibility decisions." (*Id.* at #2432–33 (citing *Stephanie C. v. Blue Cross Blue Shield of Massachusetts, Inc.,* 813 F.3d 420 (1st Cir. 2016))). Accordingly, the R&R found a de novo standard of review was appropriate in evaluating whether BCBSMA correctly denied Canter's benefit claim. (*Id.*).

In its Objections, BCBSMA concedes that the language the R&R identified in the Subscriber Certificate is "alone insufficient to confer the discretion necessary for application of the arbitrary-and-capricious standard." (Doc. 90, #2461). However, BCBSMA argues that the R&R nonetheless errs because the Subscriber Certificate was only one of multiple documents that together composed the ERISA Plan. (*Id.* at #2462–63). Specifically, BCBSMA argues that the Premium Account Agreement between BCBSMA and Alkermes is incorporated by reference into the Plan and that document makes clear that BCBSMA has "'full discretionary authority' and that "[a]ll determinations of BCBSMA … will be conclusive and binding on all persons unless it can be shown that the interpretation or determination was arbitrary and capricious.'"

26

(*Id.* at #2462). Thus, BCBSMA argues, the R&R errs in concluding that the Court should review BCBSMA's denial of Canter's benefit claim de novo.

The Court is not convinced. As the R&R correctly explained, BCBSMA has offered

> no evidence … that the premium account agreement was ever disclosed to [Canter] when coverage attached. The premium account agreement cannot be used against [Canter] to bring clarity to an ambiguously worded grant of discretion when "the terms appear in a financing agreement between the employer and the claims administrator that was never seasonably disseminated to the beneficiaries against whom enforcement is sought."

(R&R, Doc. 88, #2433–34 (quoting *Stephanie C.*, 813 F.3d at 429)).

In its Objections, BCBSMA does not state, or even suggest, that the Premium Account Agreement was in fact disclosed to Canter. If BCBSMA is instead arguing that the Premium Account Agreement can nonetheless provide the basis for discretionary authority, even when it was not disseminated to the plan beneficiary, the Court disagrees. In support of its argument, BCBSMA cites to one district court case, *Rothe v. Duke Energy Long Term Disability Plan*, in which the Court "appl[ied] the] arbitrary-and-capricious standard because the insurance policy was incorporated by reference into 'Duke's Long Term Disability Plan' and granted the insurer 'discretionary authority to determine eligibility for benefits and to construe the terms of the plan.'" (Obj., Doc 90, #2463 (citing *Rothe*, No. 1:15cv211, 2016 WL 5661686, at *2 (S.D. Ohio Sept. 30, 2016))). But *Rothe* fails to directly address the question at hand, which is not whether the Premium Account Agreement could *ever* be considered a plan document, but rather whether it should be considered a plan document when

the plan beneficiary argues that it was never "seasonably disseminated" to him. And to the extent the Sixth Circuit has addressed *that* question, it has suggested that "group policies" can only be considered plan documents when they are "provided to employees by the insurance company." *Hogan v. Life Ins. Co. of N. Am.*, 521 F. App'x 410, 415 (6th Cir. 2013) (citing *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380-81 (6th Cir. 1996)). Similarly, at least one district court in this Circuit has observed that, to be considered a plan document, the "plan participant [must be able to] read [the document] to determine his or her rights or obligations under the plan." *L&W Assocs. Welfare Benefit Plan v. Estate of Wines,* No. 12-cv-13524, 2014 WL 117349, at *8 (E.D. Mich. Jan. 13, 2014) (citation omitted).[9] In short, if the Premium Account Agreement was not provided to Canter (and BCBSMA does not suggest that

---

[9] Admittedly, in *Weinkauf v. Unicare Life & Health Insurance Co.,* No. 1:09-CV-638, 2010 WL 1839441, at *3 (W.D. Mich. Apr. 23, 2010), the Western District of Michigan held that a document could be considered part of the plan so long as it was *available* to the plan member, even if it was never actually disseminated to him or her.

The Court respectfully disagrees with the *Weinkauf* Court on this issue for two reasons. First, *Weinkauf*'s holding on this issue primarily relied on the Seventh Circuit's decision in *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 817 (7th Cir. 2002). In that case, the Seventh Circuit declined to consider an administrative services agreement between the plan administrator and the member's employer to be part of the Plan. In doing so, the Seventh Circuit noted that one of ERISA's purposes is "to afford employees the opportunity to inform themselves … of their rights and obligations under the plan." *Fritcher,* 801 F.3d at 817. The *Weinkauf* Court took the phrase "opportunity to inform themselves" to mean the mere *availability* of a given document would suffice to make that document part of the plan. But in *Fritcher*, the Seventh Circuit did not address whether the plan member could have accessed the document had he asked for it. Rather, the Seventh Circuit only suggested that the Plan member had never had the "opportunity" to read the document—without offering much color as to what "opportunity" meant. Thus, while *Fritcher* does not necessarily contradict *Weinkauf*'s conclusion that a document need only be available to a member to be considered a Plan document, it does not offer significant support for that proposition either. Second, *Weinkauf* is also in tension with the Sixth Circuit's decision in *Hogan,* where the Court suggested that, to be considered a plan document, the document must have been "*provided* to employees by the insurance company," not merely made available to them. *Hogan,* 521 F. App'x at 415 (emphasis added).

it was), then it is not a valid plan document. Thus, the Court finds that BCBSMA's denial of Canter's benefit claim is subject to de novo review.

### 2.   BCBSMA's Denial Of The Benefit Claim Was Incorrect.

Finally, the Court turns to the R&R's conclusion that BCBSMA improperly denied Canter's benefit claim. In reaching that conclusion, the R&R found that BCBSMA had relied too heavily on the InterQual criteria in deciding that Canter's surgery was not medically necessary. While the R&R concluded that BCBSMA was "permitted to consider the InterQual guidelines as one factor in determining whether [Canter's] lumbar surgery" was medically necessary, (Doc. 88, #2437), BCBSMA erred in relying on the InterQual criteria *exclusively*. As the R&R explained, the Plan provided a list of six factors BCBSMA was required to consider in determining whether Canter's procedure was medically necessary. Specifically, the Plan stated, in pertinent part:

> Blue Cross and Blue Shield decides which health care services and supplies that you receive (or you are planning to receive) are medically necessary and appropriate for coverage. It will do this by *using all of the guidelines described below.*
>
> All health care services must be required services that a health care provider, using prudent clinical judgment, would provide to a patient in order to prevent or to evaluate or to diagnose or to treat an illness, injury, disease, or its symptoms. And, these health care services must also be:
>
> - [1] Furnished in accordance with generally accepted standards of professional medical practice (as recognized by the relevant medical community);
> - [2] Clinically appropriate, in terms of type, frequency, extent, site, and duration; and they must be considered effective for your illness, injury, or disease;

- [3] Consistent with the diagnosis and treatment of your condition and in accordance with Blue Cross and Blue Shield medical policies and medical technology assessment criteria;
- [4] Essential to improve your net health outcome and as beneficial as any established alternatives that are covered by Blue Cross and Blue Shield;
- [5] Consistent with the level of skilled services that are furnished and furnished in the least intensive type of medical care setting that is required by your medical condition; and
- [6] Not more costly than an alternative service or sequence of services at least as likely to produce the same therapeutic or diagnostic results to diagnose or treat your illness, injury, or disease.

(Subscriber Certificate, Doc. 77-2, #1655 (emphasis added)). Although BCBSMA was permitted to consider the InterQual criteria as part of its analysis under the third factor (i.e. as a "Blue Cross and Blue Shield[] medical policy"), (R&R, Doc. 88, #2437), BCBSMA could not use the InterQual criteria to the total exclusion of the other medical necessity factors in the Plan. (*Id.* at #2438). Rather, the R&R reasoned, the phrase "using all of the guidelines below" suggested that BCBSMA was required to consider all six of the enumerated factors holistically before reaching its decision. Moreover, the R&R added, the InterQual criteria's strict focus on certain *types* of evidence—specifically, the requirement that there be evidence of nerve compression in imaging—caused BCBSMA to disregard other potentially relevant evidence, including Dr. Kakarlapudi's operative report documenting nerve root compression. (*Id.* at #2439–41).

In its Objections, BCBSMA argues that the R&R misinterprets the Plan language to require that BCBSMA consider all the medical necessity factors before reaching a decision to deny coverage. (Obj., Doc. 90, #2467). BCBSMA notes that the

Plan specifically prefaces the medical necessity factors with the phrase: "these health care services *must* also be …." (*Id.*). BCBSMA argues that the term "must" indicates that, to be considered medically necessary, Canter's procedure must meet *all* the factors in the plan. (*Id.*). Stated differently, the "medical necessity factors," are not—by BCBSMA's logic—"factors" at all. Rather, they are *elements*. Accordingly, Canter's failure to satisfy even one element would itself be sufficient to demonstrate that his procedure was not medically necessary. (*Id.* at #2468).

The Court finds, though, that it is unnecessary to determine whether BCBSMA has offered a more persuasive interpretation of the medical necessity factors/elements. BCBSMA's argument here essentially proceeds in three steps. First, BCBSMA argues, based on the language of the Plan, that it was permitted to deny Canter's claim if he failed to satisfy even one of the six medical necessity factors/elements. Second, to satisfy the third medical necessity factor/element ("[c]onsistent with the diagnosis and treatment of your condition and in accordance with Blue Cross and Blue Shield medical policies"), BCBSMA was permitted to rely *solely* on the InterQual criteria. And third, Canter's surgery was plainly not medically necessary under the InterQual criteria. Taken together, BCBSMA argues that these three steps prove that it properly denied Canter's benefit claim.

Even if the Court accepts BCBSMA's first point, however, its argument falters on points two and three: whether BCBSMA was permitted to rely solely on the InterQual criteria and whether BCBSMA's interpretation of the InterQual criteria

was, in fact, correct. As the R&R explained, "the InterQual (IQ) guidelines themselves note the limitations of their use." (Doc. 88, #2421). Specifically, the guidelines state:

> IQ reflects clinical interpretations and analyses and cannot alone either (a) *resolve medical ambiguities of particular situations;* or (b) provide the *sole basis* for definitive decision. IQ is intended solely for use as screening guidelines with respect to medical appropriateness of healthcare services. All ultimate care decisions are strictly and solely the obligation and responsibility of your health care provider.

(*Id.* (quoting InterQual Guidelines, Doc. 82, #1965) (emphasis added)). In this case, BCBSMA attempts to do exactly what the InterQual criteria caution against by relying on them as the sole basis for its decision-making. Thus, BCBSMA cannot argue that its denial was "in accordance with" the InterQual criteria, because the InterQual criteria themselves state that it would not be appropriate to rely on them as the sole basis for definitive decision-making.

This understanding of the limitations of the InterQual criteria is also consistent with case law cited in the R&R—in particular, the Sixth Circuit's decision in *Kalish v. Liberty Mut./Liberty Life Assur. Co.*, 419 F.3d 501 (6th Cir. 2005). There, the Court found that the plan administrator had arbitrarily and capriciously denied a benefit claim based, in part, on the fact that its decision to deny benefits had relied on a report by a physician who had neither examined the plaintiff himself nor rebutted the contrary medical conclusions of a physician who had. *Id.* at 510. While the Sixth Circuit emphasized that "reliance on a file review does not, standing alone, require the conclusion that [a plan administrator] acted improperly," *id.* at 508, it also observed that "[p]lan administrators … may not arbitrarily refuse to credit a

claimant's reliable evidence, including the opinions of a treating physician." *Id.* at 507 (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003)).

Like in *Kalish*, in this case BCBSMA relied on the opinions of physicians who had not examined Canter. Although BCBSMA was not required to defer to the medical observations of Dr. Kakarlapudi, its physicians should have, at the very least, discussed Dr. Kakarlapudi's operative report in reaching their conclusions. Doing so would have also been consistent with the InterQual criteria, which themselves emphasize their limitations in "resolv[ing] medical ambiguities of particular situations." (InterQual Guidelines, Doc. 82, #1965).

Moreover, as noted above, BCBSMA also relied on an incomplete administrative record when applying the InterQual Guidelines. For example, it appears that the administrative record was lacking the MRIs and x-rays that may have revealed the nerve compression that BCBSMA argues is missing here. The Court offers no opinion on how that determination will play out on a more fulsome record, but merely observes that the current determination that the procedure was not medically necessary under InterQual Guidelines is based on incomplete information. For those reasons, the Court must reject BCBSMA's argument that it properly denied Canter's benefit claim.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Canter's Motion for Leave to File a Sur-Reply (Doc. 95).

Further, the Court **OVERRULES** BCBSMA's Objections to the Magistrate Judge's R&R (Doc. 90), and thus **ADOPTS** the R&R (Doc. 88). Accordingly, the Court **GRANTS** Canter's Motion for Judgment on the Administrative Record (Doc. 69) with regard to his procedural claims under 29 U.S.C. § 1133 and substantive claims under 29 U.S.C. § 1132(a)(%)(B), and **DENIES** his Motion in all other respects. The Court **GRANTS** BCBSMA's Motion for Judgment on the Administrative Record (Doc. 70) with respect to Canter's 29 U.S.C. § 1132(c) claim and **DENIES** BCBSMA's Motion in all other respects.

The Court **REMANDS** this matter to BCBSMA for reconsideration of Canter's claim for benefits based upon a complete administrative record. The Court **DIRECTS** the Clerk to **ADMINISTRATIVELY TERMINATE** this matter on the Court's docket, but the Court retains jurisdiction to review any new administrative determination at the request of any party.

 **SO ORDERED.**

March 23, 2022
**DATE**           **DOUGLAS R. COLE**
               **UNITED STATES DISTRICT JUDGE**