UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| KEITH W. CANTER,<br>    Plaintiff, | Case No. 1:17-cv-399<br>Cole, J.<br>Litkovitz, M.J. |
|         v. | |
| BLUE CROSS BLUE SHIELD OF<br>MASSACHUSETTS, INC.,<br>    Defendant. | REPORT AND<br>RECOMMENDATION |

This matter is before the Court on plaintiff's motion for attorney fees for remand (Docs. 101, 103),[1] plaintiff's amended motion to reopen and return case to the active docket (Doc. 111), and plaintiff's amended second motion for judgment on the record after remand (Doc. 112). Appropriate response and reply memoranda have been filed (Docs. 106, 107, 118, 119, 120, 121).

**I. Background**

The Court previously provided a more complete factual history. (Doc. 100). However, at this procedural juncture, the facts can be briefly summarized as follows. Plaintiff Keith Canter, a full-time employee at Alkermes, Inc., participated in the Alkermes Blue Care Elect Preferred Provider Plan (the Plan) underwritten and insured by defendant Blue Cross Blue Shield of Massachusetts, Inc. (BCBSMA). In 2015, Canter received treatment at the Laser Spine Institute followed by a seven-year battle concerning BCBSMA's coverage of his medical treatment claims. Following additional evidence on remand from this Court, BCBSMA changed its decision and paid Canter's claim in the amount of $85,022.

---

[1] Plaintiff refiled the motion for attorney fees (Doc. 101) in the format required to comply with Local Rule 5.1 (Doc. 103). As docket number 103 is identical to docket number 101 except for formatting, the Court will analyze docket number 103 and recommend that docket number 101 be denied as moot.

Canter now moves for: (1) payment of his attorney fees and costs; (2) to reopen the case; and (3) for interest on the $85,022 payment. BCBSMA opposes Canter's motions. The Court will address each motion individually.

## II. Legal Standard

Pursuant to Subchapter I, Part 4 of the Employee Retirement Income Security Act (ERISA), "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III." 29 U.S.C. § 1104(a)(1)(D). A plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In an ERISA action brought by a plan participant, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C § 1132(g)(1).

## III. Canter's Amended Motion to Reopen and Return Case to Active Docket (Doc. 111) Should be Denied

Canter moves to reopen this case to consider whether he is entitled to additional benefits pursuant to 29 U.S.C. § 1104(a)(1)(D) and 29 U.S.C. § 1132(a)(1)(B). (Doc. 111). BCBSMA summarily responded that Canter has received all benefits due under the Plan so his motion to reopen is moot. (Doc. 118). As will be explained below, Canter has received the benefits due under the Plan. The Court need not reopen a case to award attorney fees. Thus, Canter's motion to reopen the case should be denied.

**IV. Canter's Amended Second Motion for Judgment on the Record After Remand (Doc. 112) Should be Denied**

Canter alleges, pursuant to 29 U.S.C. §§ 1104(a)(1)(D) and 1132(a)(1)(B), that the Plan language requires that interest be paid beginning 45 days after BCBSMA received his claim. (Doc. 112 at PAGEID 2799-2801). Alternatively, Canter contends that BCBSMA must pay prejudgment interest on the claim amount to prevent BCBSMA's unjust enrichment. (*Id.* at PAGEID 2802-2803).

BCBSMA asserts that the Plan's interest provision does not apply because: (1) the provider (rather than Canter) filed the underlying claim; (2) the interest provision is permissive rather than mandatory; and (3) Canter waived the interest argument by not raising it in any dispositive motions during the five years the parties litigated this matter. (Doc. 119 at PAGEID 2823-2827). BCBSMA further contends that Canter's alternative request for prejudgment interest fails because there is no money judgment on which interest could accrue. (*Id.* at PAGEID 2829-2830).

**A. Waiver of Entitlement under the Plan's Interest Provision**

An argument can be deemed waived if it is raised for the first time in a reply brief, *Kroger v. Mohr*, 964 F.3d 532, 540 n.2 (6th Cir. 2020) (citing *Hunt v. Big Lots Stores, Inc.*, 244 F.R.D. 394, 397 (N.D. Ohio 2007)), or in a motion for reconsideration, *Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, No. 3:16-cv-466, 2019 WL 5956543, at *1-2 (S.D. Ohio Nov. 13, 2019) ("DMHA's belated argument that the Court committed 'clear error' is severely undermined by the fact that it, without any explanation, waited five months to move for reconsideration."). Similarly, an affirmative defense may be waived if the asserting party fails to plead it in the first responsive pleading or a timely dispositive motion. *Abernathy v.*

*Corinthian Colls., Inc.*, No. 2:10-cv-131, 2013 WL 12099308, at *3 (S.D. Ohio Feb. 7, 2013) (affirmative defense waived when not raised until 48 hours before scheduled trial).

However, it is far less clear that an employee waives a claim for prejudgment interest under an ERISA plan by failing to fully develop the argument until the underlying claim is paid. The Court located no authority for that conclusion, and neither party cited such a case. In addition, Canter requested prejudgment interest in his complaint. (Doc. 1 at PAGEID 14) (asking "[t]hat the Court order the Defendants to pay Plaintiff's pre-judgment interest on all claim amounts that have accrued prior to the date of judgment"). Canter reiterated his request for prejudgment interest in his motion for judgment on the record. (Doc. 69 at PAGEID 1340). Accordingly, he has not waived his request for prejudgment interest. *See Gemini Ins. Co. v. Potts*, No. 2:16-cv-612, 2020 WL 4000977, at *3 n.1 (S.D. Ohio July 15, 2020) (ERISA exclusion argument absent from motion for judgment on the pleadings not waived when pled in complaint).

### B. The Plan's Interest Provision Does Not Apply

BCBSMA does not contest Canter's claim that the Court should review the Plan language *de novo*. (Doc. 112 at PAGEID 2810, Doc. 100 at PAGEID 2571).[2] In interpreting an ERISA plan, courts must "begin with the policy's text." *Fulkerson v. Unum Life Ins. Co. of America*, 36 F.4th 678, 681 (6th Cir. 2022). "Unless that text is ambiguous, we presume the policy means what it says and therefore give effect to its 'plain meaning in an ordinary and popular sense." *Id.* (quoting *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011)).

---

[2] For a discussion of the different standards of review that may apply in ERISA matters, see *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 264 (6th Cir. 2018).

Canter seeks prejudgment interest of 18 percent per year under the following Plan provision:

### When the Provider Files a Claim

The health care provider will file a claim for you when you receive a *covered service* from a *covered provider* who has a payment agreement with *Blue Cross and Blue Shield*. Or, for *covered services* you receive outside of Massachusetts, a health care provider will file a claim for you when he or she has a payment agreement with the local Blue Cross and/or Blue Shield Plan. Just tell the health care provider that you are a *member* and show the health care provider your ID card. Also, be sure to give the health care provider any other information that is needed to file your claim. You must properly inform your health care provider within 30 days after you receive the *covered service*. If you do not, coverage will not have to be provided. *Blue Cross and Blue Shield* will pay the health care provider directly for *covered services* when the provider has a payment agreement with *Blue Cross and Blue Shield* (or with the local Blue Cross and/or Blue Shield Plan).

### When the Member Files a Claim

You may have to file your claim when you receive a *covered service* from a *covered provider* who does not have a payment agreement with *Blue Cross and Blue Shield* or a *covered provider* outside of Massachusetts who does not have a payment agreement with the local Blue Cross and/or Blue Shield Plan. The health care provider may ask you to pay the entire charge at the time of the visit or at a later time. It is up to you to pay your health care provider. To file a claim to *Blue Cross and Blue Shield* for repayment, you must:
- Fill out a claim form;
- Attach your original itemized bills; and
- Mail the claim to the *Blue Cross and Blue Shield* customer service office.

You can get claim forms from the *Blue Cross and Blue Shield* customer service office. (See Part 1.) *Blue Cross and Blue Shield* will mail to you all forms that you will need within 15 days after receiving notice that you obtained some service or supply for which you may be paid. (In the event *Blue Cross and Blue Shield* fails to comply with this provision, or within 45 days of receiving your claim, fails to send you a check or a notice in writing of why your claim is not being paid or a notice that asks you for more information about your claim, you may be paid interest on your claim when the claim is for a *covered service* that is furnished by a non-participating hospital, other covered health care facility, or other covered non-professional provider. This interest will be accrued beginning 45 days after *Blue Cross and Blue Shield* receives your claim at the rate of 1½% for each month, but no more than 18% in a year. This interest payment provision does not apply to a claim which *Blue Cross and Blue Shield* is investigating because of suspected fraud.)

5

(Doc. 77-2 at PAGEID 1710).

It is undisputed that Laser Spine Institute submitted claim forms related to Canter's surgery to the Blue Cross and Blue Shield Plan in Ohio. (Doc. 119-1 at PAGEID 2831). It is further undisputed that Laser Spine Institute has no agreement with BCBSMA and is located outside of Massachusetts. (Doc. 112 at PAGEID 2800).

Canter contends that the 18% interest clause applies because he received a covered service from an outside provider regardless of who submitted the claim form. The Court disagrees.

Regardless of the headings in these provisions, the plain meaning of the policy language indicates that the 18 percent interest parenthetical applies **only if** BCBSMA failed to provide Canter with necessary forms within 15 days **or** failed to send either a check or a written notice within 45 days of receiving Canter's claim. Neither of those prerequisites are present here. BCBSMA was not required to provide claim forms to Canter because Laser Spine Institute filed his claim. (Doc. 119-1 at PAGEID 2831). Furthermore, it is undisputed that BCBSMA issued a timely written notice to Canter (although one it changed later). (Doc. 1 at PAGEID 3, Doc. 119 at PAGEID 2827). Accordingly, the 18 percent interest provision does not apply here.

### C. Canter is Not Entitled to Prejudgment Interest

Canter next contends that he is entitled to prejudgment interest at the current prime interest rate of 5.5 percent (as of August 9, 2022). (Doc. 120 at PAGEID 2841). According to Canter, he should be compensated "for the lost interest value of money wrongfully withheld from him." (*Id.*). BCBSMA counters that Canter is not entitled to prejudgment interest, but, if awarded, interest should be limited to the applicable blended federal statutory rate of 1 percent. (Doc. 119 at PAGEID 2829-2830).

> As the Sixth Circuit has explained:
>
> ERISA § 502(a)(1)(B) provides, "A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). Although the statute does not specifically provide for interest, we have stated that "prejudgment interest may be awarded in an appropriate case under ERISA." *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 374–76 (6th Cir. 2015) (en banc) (§ 1132(a)(1)(B) provides for "recovery of benefits and attorney's fees and, potentially, prejudgment interest"). The decision whether to award interest in connection with a § 502(a)(1)(B) claim is left to the discretion of the district court "in accordance with general equitable principles." *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 685–86 (6th Cir. 2013) (citation omitted). "An award of prejudgment interest in the ERISA context is compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award." *Rochow*, 780 F.3d at 376. An interest award should "simply compensate a beneficiary for the lost interest value of money wrongfully withheld from him or her." *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000).

*Mulder v. Loc. 705, Int'l Bhd. Of Teamsters, Pension Fund*, 794 F. App'x 451, 454-55 (6th Cir. 2019).

In this case, prejudgment interest is not appropriate because Canter did not lose the interest value of any money. BCBSMA owed the claim amount to the Laser Spine Institute, not to Canter. Although Canter argues that he is entitled to prejudgment interest on the more than $85,000 BCBSMA ultimately paid the Laser Spine Institute, Canter lost no interest on that belated payment. Canter acknowledges in his Court-ordered declaration that he paid the Laser Spine Institute only $1,000 for his back surgery and related medical procedures in 2015, presumably the amount he personally owed for the procedure. (Doc. 123-1 at PAGEID 2849). Thus, Canter lost no monetary benefit because of BCBSMA's delayed payment to the Laser Spine Institute, and he is entitled to no prejudgment interest.

**V. Canter's Motion for Attorney Fees for Remand (Doc. 103) Should be Granted**

"Under ERISA, 'the court in its discretion' may award attorneys' fees to a party, 29 U.S.C. § 1132(g), so long as that party achieved 'some success on the merits,' *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 . . . (2010)." *Guest-Marcotte v. Life Ins. Co. of N. Am.*, 768 F. App'x 357, 360 (6th Cir. 2019). In determining whether to award attorney fees, courts weigh the five "*King* factors":

> (1) The degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.* (quoting *Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985)). These five factors "are simply considerations representing a flexible approach." *First Tr. Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005). "No single factor is determinative, and there is no presumption of fees in favor of a prevailing plaintiff." *Farley v. Hartford Life and Acc. Ins. Co.*, No. 2:18-cv-722, 2020 WL 13469142, at *3 (S.D. Ohio Oct. 21, 2020).

As it is undisputed that Canter achieved some success on the merits, the Court will analyze the five *King* factors. First, the Court must "consider the 'degree' of culpability or bad faith, not merely whether the opposing party is culpable in any sense of the word." *Geiger v. Pfizer, Inc.*, 549 F. App'x 335, 338 (6th Cir. 2013). As explained more fully in the Court's remand Order, this litigation could have been avoided had BCBSMA simply explained to Canter in 2016 the information on which it relied and the additional materials needed to perfect his claim. (Doc. 100 at PAGEID 2575-2578). In addition, BCBSMA "clothed [Alkermes' human resources representative] with apparent authority to answer Canter's questions" and then refused to process the second appeal that BCBSMA's agent stated was permitted. (*Id.* at PAGEID

8

2580). Canter relied on this representation to his detriment because, by filing a second appeal, he forfeited his right to an external review and to present the additional evidence BCBSMA required to perfect his claim. (*Id.*). Although not necessarily indicative of bad faith, "this was not just one error or mistake, but rather a culmination of issues" rendering BCBSMA sufficiently culpable under the first factor. *See Farley*, 2020 WL 13469142, at * 3 (awarding attorney fees where defendant's own reviewers did not examine plaintiff and did not explain adequately the basis for denying benefits); *see also Guest-Marcotte*, 768 F. App'x at 361-362 (finding sufficient culpability where "string of actions essentially prevented" plaintiff from proving entitlement to benefits, including failure to conduct physical examination and rejecting plaintiff's application for failure to include evidence that defendant declined to obtain).

As for the second factor, BCBSMA's ability to pay an award of attorney fees, "BCBSMA does not dispute Mr. Canter's reference to its annual report for years 2018-2019." (Doc. 106 at PAGEID 2714). While BCBSMA does not contend that it lacks the ability to pay any attorney fees awarded, it urges the Court to consider its status as a non-profit organization. (*Id.* at PAGEID 2714-15). The Court has considered BCBSMA's non-profit status but determines that BCBSMA has the ability to pay an attorney fee award. Thus, this factor weighs in favor of Canter.

The third factor, the deterrent effect of an award on other persons under similar circumstances, also weighs in favor of awarding attorney fees. "The deterrent effect on other plan administrators is likely to have more significance in a case where the defendant is highly culpable—where 'deliberate misconduct is in the offing, rather than when the plan administrator has just made an honest mistake.'" *Pfenning v. Liberty Life Assur. Co. of Boston*, 282 F. Supp. 3d 1027, 1030 (S.D. Ohio 2017) (quoting *Bowers v. Hartford Life and Acc. Ins. Co.*, No. 2:09-

9

cv-290, 2010 WL 4117515, at *4 (S.D. Ohio Oct. 19, 2010) (internal quotation marks omitted)). "If the only consequence of an arbitrary denial of benefits is the chance of being sued and a possibility of reinstatement of benefits at some future date, insurance companies, with this strong conflict of interest, will have little incentive to adhere to their fiduciary obligations." *Id.* at 1031 (quoting *Niswonger v. PNC Bank Corp. & Affiliates Long Term Disability Plan*, No. 3:10-cv-377, 2011 WL 4543929, at *3 (S.D. Ohio Sept. 29, 2011)). Thus, "[l]ack of bad faith should not impact whether a court finds fees could have a deterrent effect." *Niswonger*, 2011 WL 4543929, at *3. Although BCBSMA's conduct here does not rise to the level of bad faith, neither was it an honest mistake. The deterrence evaluation and culpability go hand-in-hand. Thus, an award of fees in this case would serve to "re-orient" plan insurers and administrators "to the idea that they perform a 'fiduciary function' for claim beneficiaries and that they shall avoid activities that 'are below market standards.'" *See Pfenning*, 282 F. Supp. 3d at 1031.

Canter reluctantly acknowledges that he did not seek to confer a common benefit. (Doc. 103 at PAGEID 2663). Thus, the fourth *King* factor weighs against awarding attorney fees.

The final factor, the relative merit of the parties' positions, weighs in favor of awarding attorney fees. BCBSMA contends, without elucidation, that the "length and detail of the Report and Recommendation and Opinion and Order reveal that there were a number of 'closely contested issues,' and that BCBSMA's arguments were 'no more devoid of merit than those of any other losing litigant.'" (Doc. 106 at PAGEID 2716). The Court disagrees. The length and specificity of the Court's filings speak more to the number and detail of BCBSMA's arguments than it does to their relative merits. A thorough examination of the Opinion and Order remanding this matter to BCBSMA demonstrates that every one of BCBSMA's objections was rejected.

Accordingly, after considering each of the *King* factors and applying them to the specifics of this case, the Court concludes that attorney fees should be awarded to Canter. The Court will now turn its attention to the amount of such attorney fees.

## VI. Reasonableness of Attorney Fees Requested

ERISA permits the award of a "reasonable" attorney fee. 29 U.S.C. § 1132(g)(1). Courts in this Circuit employ the "lodestar method" to calculate reasonable attorney fees, i.e. "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates" after making a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434, 437.

A trial court enjoys "[s]ubstantial deference" in determining attorney fee awards due to its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *NE Ohio Coalition for the Homeless*, 831 F.3d at 702-703 (quoting *Hensley*, 461 U.S. at 437). However, because that discretion has limits, "the court must provide 'a concise but clear explanation of its reasons for the fee award.'" *Id.* at 703 (quoting *Hensley*, 461 U.S. at 437). "[I]n assessing fees, district courts are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply to do 'rough justice.'" *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). "This means that the court can rely on estimates based on its 'overall sense of a suit.'" *Id.* (quoting *Fox*, 563 U.S. at 838).

In this case, BCBSMA concedes that counsel's requested hourly rate of $490 per hour is reasonable for an experienced ERISA attorney like Canter's. (Doc. 106 at PAGEID 2718).

11

However, BCBSMA contends that the hours billed are excessive and should be subject to "at least a 33% reduction" for unnecessary and/or unsuccessful work. (*Id.*).

The issue before the Court is not whether, in isolated hindsight, plaintiff's counsel could have expended fewer hours on certain tasks. Rather, the issue is whether work performed "was of a sort that 'a reasonable attorney would have believed . . . to be reasonably expended in pursuit of success at the point in time when the work was performed.'" *NE Ohio Coalition for the Homeless*, 831 F.3d at 708 (quoting *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)).

Plaintiff's counsel represents to the Court that he reviewed the time entries submitted and excluded hours he deemed excessive, redundant or otherwise unnecessary. (Doc. 103-1 at PAGEID 2676). Having observed this case from the beginning and having thoroughly reviewed every time entry from May 5, 2017 to the present, the Court concludes that plaintiff's counsel did, in fact, make a good faith effort to exercise billing judgment and present a reasonable number of hours expended in this case. However, the Court concludes that certain additional hours also should be excluded as unreasonable in this action.

First, plaintiff's counsel requests payment for 43.9 hours related to a prior motion to compel and a prior fee petition related to that motion to compel. (*Compare* Doc. 62-1 at PAGEID 1277-79 and Doc. 103-1 at PAGEID 2681-2682). For the reasons stated in the Court's prior Report and Recommendation (Doc. 75) to which neither party objected, those hours should be excluded. Second, the Court would deem unreasonable any hours related to Canter's amended second motion for judgment on the record after remand (Doc. 112), in which he sought prejudgment interest. As the Court explained above, Canter's position in that motion lacks

12

merit. It is not work that his attorney should have believed to be reasonably expended in pursuit of success in this action and would not be deemed compensable in the event Canter seeks a further award of attorney fees.[3] Thus, 43.9 hours should be subtracted from the 461.8 total hours requested to reflect a reasonable number of hours expended. Applying the lodestar method to this case, reasonable attorney fees total $204,771 (417.9 hours times $490 per hour).

In addition to reasonable attorney fees, Canter seeks $622.75 in costs. (Doc. 103-1 at PAGEID 2689). BCBSMA does not object to the reasonableness of those costs. (*See* Doc. 106). Accordingly, the Court should award costs in the amount of $622.75.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's motion for attorney fees for remand (Doc. 101) be **DENIED AS MOOT**;

2. Plaintiff's motion for attorney fees for remand (Doc. 103) be **GRANTED** in the amount of $204,771 in attorney fees and $622.75 in costs;

3. Plaintiff's amended motion to reopen and return case to the active docket (Doc. 111) be **DENIED**; and

4. Plaintiff's amended second motion for judgment on the record after remand (Doc. 112) be **DENIED**.

Date: 12/15/2022

Karen L. Litkovitz
United States Magistrate Judge

---

[3] Canter filed his motion for attorney fees (Doc. 103) prior to filing his amended second motion for judgment on the record after remand (Doc. 112). Thus, the attorney time records submitted with his fee request do not reflect hours expended on the amended second motion for judgment on the record after remand. (*See* Doc. 103-1).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEITH W. CANTER,
    Plaintiff,

vs.

BLUE CROSS BLUE SHIELD OF
MASSACHUSETTS, INC.,
    Defendant.

Case No. 1:17-cv-399
Cole, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).