## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**KEITH W. CANTER,**

     **Plaintiff,**

    **v.**

**ALKERMES BLUE CARE ELECT PREFERRED PROVIDER PLAN,** *et al.*,

    **Defendants.**

**Case No. 1:17-cv-399**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Litkovitz**

### OPINION AND ORDER

Before the Court are: (1) several post-remand motions seeking (a) fees, (Docs. 101, 103), (b) to reopen the case, (Doc. 111), and (c) judgment as a matter of law in the reopened case, (Doc. 112); (2) Magistrate Judge Litkovitz's December 15, 2022, Report and Recommendation (R&R, Doc. 125) addressing those post-remand motions; (3) the parties' objections to the R&R, (Docs. 128, 129); and (4) a fully briefed miscellaneous motion for leave to file a response, (Docs. 136, 139, 141). The R&R recommends that the Court (1) grant Plaintiff Keith Canter's Motion for Award of Attorney's Fees for Remand (Doc. 103) in the amount of $204,771 in attorney's fees and $622.75 in costs; (2) deny as moot the previously filed duplicate copy of that motion, (Doc. 101); (3) deny Canter's Amended Motion to Reopen and Return Case to Active Docket (Doc. 111); and (4) deny his Amended Second Motion for Judgment on the Record after Remand (Doc. 112).

For the reasons stated below, the Court **ADOPTS IN PART AND REJECTS IN PART** the R&R, (Doc. 125), **SUSTAINS IN PART AND OVERRULES IN**

**PART** Canter's Objections (Doc. 128), and **OVERRULES** the Objections (Doc. 129) lodged by Defendant Blue Cross Blue Shield of Massachusetts, Inc., (BCBSMA). The Court also **GRANTS** Canter's Motion for Permission to File Reply to BCBSMA's Response to Order (Doc. 136). In line with these rulings, the Court **GRANTS** Canter's Amended Motion to Reopen and Return Case to Active Docket (Doc. 111) and **GRANTS IN PART AND DENIES IN PART** his Amended Second Motion for Judgment on the Record after Remand (Doc. 112). And the Court **GRANTS IN PART AND DENIES IN PART** Canter's Motion for Award of Attorney's Fees for Remand (Doc. 103) and **DENIES AS MOOT** Canter's other fee motion filed in duplicate, (Doc. 101).

As a result, after reopening the case, the Court **AWARDS Canter $100,289.01 ($15,267.01 of which is for an award of prejudgment interest) on Count II of the Complaint, as well as $204,771 in fees and $622.75 in costs**. Because Canter has already been paid $85,022, **BCBSMA owes Canter the prejudgment interest award of $15,267.01 plus $204,771 in fees and $622.75 in costs**.

## BACKGROUND

This case has a long and arduous history but at its core is simply a dispute over Canter's entitlement to healthcare benefits offered by his former employer Alkermes, Inc. (Op. & Order, Doc. 100, #2562). More specifically, Canter's job enabled him to participate in the Alkermes Blue Care Elect Preferred Provider Plan (the Plan)[1]

---

[1] As the Court noted in its previous Opinion and Order terminating this case, Canter at first sued the Plan but dismissed it as a defendant without prejudice on August 16, 2017. (Doc. 100, #2562 n.2). Thus, BCBSMA was the only defendant remaining.

underwritten and insured by BCBSMA, which also acted as the Plan's claims administrator. (*Id.*).

As is relevant here, Canter underwent a lumbar decompression and discectomy at the Laser Spine Institute (LSI) for his ongoing hip, leg, and back pain on July 6, 2015. (*Id.* at #2562–63). Under the Plan, LSI was an out-of-state, out-of-network medical care provider, which would normally require Canter to file the claims for reimbursement. (Doc. 69-3, #1362; Doc. 77-2, #1710). But for whatever reason, LSI itself sought reimbursement for the surgery on Canter's behalf by sending two different claim requests to BCBSMA's Ohio affiliate (Canter never submitted any claim relating to this surgery to BCBSMA or its Ohio affiliate). (Doc. 119-1, #2831; *see* Doc. 128, #2885–86 (Canter's acknowledging that LSI submitted the claims on his behalf)). LSI submitted the first claim for $41,034 on July 30, 2015, to BCBSMA's Ohio affiliate; BCBSMA received notice of this first claim the same day. (Doc. 26, #990; Doc. 135-1, #2949). And LSI submitted the second claim for $43,988 to BCBSMA's Ohio affiliate on August 10, 2015; BCBSMA received notice of the second claim the next day. (Doc. 26, #1002; Doc. 135-1, #2950).

BCBSMA responded to both claims shortly after it received them. It sent Canter an explanation-of-benefits form for the first claim on August 7, 2015, and an explanation-of-benefits form for the second claim on August 28, 2015. (Doc. 26, #988, 1000). In both notices, BCBSMA informed Canter that BCBSMA anticipated he would be responsible for paying for the full costs of the surgery. (*Id.*). But it explained that its refusal to reimburse Canter for either claim at the time was because his

"medical records ha[d] been requested[, which meant that] review [of whether his claims were covered] w[ould] continue when the[] [records] [we]re received." (*Id.* at #990, 1002). After BCBSMA received some (though not all) of the medical records, however, it concluded that Canter had not established medical necessity and denied coverage. (Doc. 100, #2564–65).

After trying to persuade BCBSMA to change its determination internally, Canter via counsel filed this suit, in which Canter sought damages in the amount of the LSI claims, prejudgment interest, and attorneys' fees and costs, among other relief. (Compl., Doc. 1, #14–15). Following discovery, Canter moved for judgment as a matter of law. (Doc. 69). The Court responded to that motion by granting Canter some relief, but not exactly the relief he wanted. Specifically, the Court concluded that BCBSMA's reliance on an incomplete administrative record and failure to accord sufficient weight to all relevant medical factors listed in the Plan violated Canter's procedural rights under the Plan. (Doc. 100, #2591–93). And based on that violation, the Court remanded the matter to BCBSMA for reconsideration of the benefits decision. But the Court did not award any damages or other monetary relief. (*Id.* at #2594).

Shortly thereafter, Canter moved for fees for successfully obtaining remand. (Docs. 101, 103).[2] BCBSMA opposed this request by contending that (1) the applicable factors governing whether fees are owed in a suit brought under the Employee

---

[2] Canter's fee motion was filed in duplicate because the first docketed version of the motion did not comply with Local Rule 5.1(c). There are no substantive differences between the two documents. (Doc. 125, #2852 n.1).

4

Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, like the one filed here, weighed against granting Canter his fees, and (2) if fees were awarded, the requested amount was unreasonable. (Doc. 106, #2708–09).

Meanwhile, on remand, BCBSMA changed its decision and awarded Canter $85,022 ($41,034 on the first claim, and $43,988 on the second). (Doc. 112-1, #2805–06). Canter, however, believes he is entitled to more. So he filed two motions to obtain additional monies. First, he moved to reopen the case. (Doc. 111). And second, he moved for judgment as a matter of law on the record. (Doc. 112). According to Canter, BCBSMA also owes Canter interest on this $85,022 payment under the Plan's interest provision, which operates as a sort of penalty by kicking in (at a high interest rate) after a set time to dissuade BCBSMA from dragging its feet in responding to any claim submissions.[3] (*Id.* at #2799–801 (citing Doc. 77-2, #1710)). Canter argues in the alternative that prejudgment interest is due anyway because a failure to pay for the time value of the money owed would unjustly enrich BCBSMA. (*Id.* at #2802–04).

---

[3] This Plan provision to which Canter refers states in relevant part:

> *Blue Cross and Blue Shield* will mail to you all forms that you will need within 15 days after receiving notice that you obtained some service or supply for which you may be paid. (In the event *Blue Cross and Blue Shield* fails to comply with this provision or, within 45 days of receiving your claim, fails to send you a check or a notice in writing of why your claim is not being paid or a notice that asks you for more information about your claim, you may be paid interest on your claim when the claim is for a *covered service* that is furnished by a non-participating hospital, other covered health care facility, or other covered non-professional provider. This interest will be accrued beginning 45 days after *Blue Cross and Blue Shield* receives your claim at the rate of 1½% for each month, but no more than 18% in a year.

(Doc. 77-2, #1710).

BCBSMA opposed both motions. (Docs. 118, 119). It argued that the Plan interest provision is inapplicable because LSI (not Canter) submitted the claims to BCBSMA and BCBSMA timely responded (within the 45-day period required by the Plan's terms) explaining why at that time it was denying Canter's claims. (Doc. 119, #2825–28). And as to Canter's other theory, BCBSMA argued that prejudgment interest does not apply under common law principles because there has been no money judgment entered here. (*Id.* at #2829). Canter thereafter replied. (Docs. 120, 121).

On December 15, 2022, the Magistrate Judge issued the R&R recommending awarding Canter fees but denying his request for interest. (Doc. 125, #2864). As to the former, the Magistrate Judge concluded that the relevant factors governing fee awards favored an award here but recommended slightly reducing the requested amount to ensure it did not include attorney hours expended on meritless motions. (*Id.* at #2859–64). And as to the latter, the Magistrate Judge found that under the unambiguous terms of the Plan, BCBSMA responded to LSI's submission of claims within the appropriate timeframe, thereby avoiding triggering the interest provision. (*Id.* at #2857). As for Canter's unjust-enrichment theory, the Magistrate Judge concluded prejudgment interest did not apply because the money BCBSMA paid for the surgery *was owed to LSI*, not Canter—in other words, "Canter lost no monetary benefit because of BCBSMA's delayed payment to [LSI]." (*Id.* at #2858).

Both parties objected. Canter claimed the R&R misread the Plan, failed to appreciate that BCBSMA would be unjustly enriched if prejudgment interest were

6

not awarded, and overstepped by preemptively denying a request for fees related to his current motion. (Doc. 128, #2876–77). He did not object, however, to the R&R's proposed reduction of the fee award. BCBSMA objected to the fee award. It reiterated its belief that on a proper weighing of the relevant factors governing an award of fees, the Court should conclude that Canter is not entitled to such an award. (Doc. 129, #2897–98). But BCBSMA said not a word about the reasonableness of the recommended award amount. The parties responded to each other's objections. (Docs. 130, 132).

One would think this would be the end of the motions practice. But it was not. The Court, in reviewing the papers, determined that the record did not establish *when* LIS notified BCBSMA of the claims. (Doc. 133, #2943). Given BCBSMA argued that the interest provision could not apply because it responded promptly to LSI's submissions, the Court ordered BCBSMA to "supplement[] the record with evidence documenting the timing of the Laser Spine Institute's submission of Canter's claims." (*Id.* at #2944). BCBSMA did so on April 10, 2024. (Doc. 135). But it also decided to do slightly more than to file the requested evidence—it argued (in two brief paragraphs) that such evidence supported its position. (*Id.* at #2947–48). Not to be outdone, Canter moved for leave to file a brief in response to BCBSMA's two-paragraph argument. (Doc. 136). Then, without receiving leave to do so, Canter also filed the brief on this docket, rather than attaching it to the motion. (Doc. 138). So rather than disposing of the pending motions upon BCBSMA's filing of the supplemental evidence on April 10,

2024, the Court had to let this extra motion brief. BCBSMA responded opposing the request for leave to file the response. (Doc. 139). And Canter then replied. (Doc. 141).

With that, this (overly) litigated matter is now ripe for the Court's review.

## LEGAL STANDARD

"Under Federal Rule of Civil Procedure 72(b)(3), district courts review an R&R de novo after a party files a timely objection. But that review extends only to any portion to which a proper objection was made." *Williams v. Parikh*, No. 1:23-cv-167, 2023 WL 8824845, at *2 (S.D. Ohio Dec. 21, 2023) (cleaned up). In response to a valid objection, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* (quoting Fed. R. Civ. P. 72(b)(3)) (cleaned up). In contrast, if a party makes only a general objection, that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A litigant must identify each issue in the R&R to which he objects with sufficient clarity, or else forfeit the Court's de novo review of the issue. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."). For unobjected portions of the R&R, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

## LAW AND ANALYSIS

Because this case has four pending motions, a roadmap is helpful. The most logical path forward is actually for the Court to work its way backwards in time. This is because the last filed motion, Canter's request for leave to file a reply, governs the arguments the Court may consider in evaluating the parties' objections to the R&R. After granting Canter the right to file that reply (even though Canter already took the liberty of filing it), the Court turns to the motion for judgment as a matter of law on the record after remand. This is because disposing of Canter's request for additional relief conclusively answers whether this case needs to be reopened. While the Court finds that Canter's argument regarding the application of the Plan's penalty interest provision lacks merit, the same cannot be said for Canter's argument about prejudgment interest. Given the payment of $85,022 did not constitute complete satisfaction for Canter's claim, the Court will grant the motion to reopen and then grant Canter judgment as a matter of law. Finally, that leaves Canter's motion for fees. As explained below, the Court finds some fees and costs are properly awarded to Canter. With that, this matter should finally see its long-awaited end.

### A.    Motion for Leave to File a Reply

Canter's first motion is a request to file a reply brief.[4] There he contends that BCBSMA's supplementing the record with the evidence the Court requested means

---

[4] Though Canter labels his brief a "reply" brief, it is really no such thing. In substance, *see McGlone v. Bell*, 681 F.3d 718, 728 n.2 (6th Cir. 2012) (noting district courts retain "discretion to address substance over form"), Canter's brief is a memorandum responding to newly added evidence filed at the direction of the Court. In other words, it is akin to a sur-reply given it responds to a filing of the opposing side outside of the standard briefing regiment.

Canter has a right to respond to BCBSMA's filing. (Doc. 136). According to Canter, this is warranted because he claims BCBSMA's response to the Court's Order (1) actually included argument (not just evidence as requested), and (2) in fact raised a *new* argument (i.e., that the Plan's interest provision did not apply to Canter because BCBSMA timely provided notice of its decision on his claims in accordance with the deadline set forth in that provision—the argument the Magistrate Judge credited in the R&R). (*Id.* at #2951–52).

Canter cites no standard governing whether leave should be granted. But the Court agrees with BCBSMA that Canter must show "good cause" as the local rules bar the filing of "additional memoranda beyond those enumerated … except … for good cause shown" and Canter's brief responding to evidence filed at the direction of the Court does not fit into any enumerated category. S.D. Ohio Civ. R. 7.2(a)(2); *cf. Canter v. Alkermes Blue Care Elect Preferred Provider Plan*, 593 F. Supp. 3d 737, 744–45 (S.D. Ohio 2022) (holding that the filing of a sur-reply, not governed by either a Federal Rule of Civil Procedure or Local Rule, must be supported by good cause).

So the question is whether Canter has shown good cause. He has. As Canter observes, BCBSMA did not follow the Court's instructions "to substantiate its argument … *by supplementing the record with evidence.*" (Doc. 133, #2943–44 (emphasis added)). The Court did not ask BCBSMA to explain that evidence or to put a gloss on it. The Court merely asked for BCBSMA simply to file such supplemental evidence. Instead, beyond filing the requested documentation, BCBSMA also elected to editorialize the declaration by opining on its legal effect. (Doc. 135, #2947–48

10

(arguing twice what "[t]he Callahan Declaration establishes")). While Canter is wrong to suggest that this reflects a "new argument,"[5] the Court nonetheless agrees with Canter that he should have an opportunity to respond because BCBSMA exceeded the scope of the Court's request. *Cf. Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (explaining that good cause exists in situations where a party's opportunity to respond to his counterparty's arguments have been impaired). And besides, authorizing this filing would cause BCBSMA no prejudice. *Golden Eagle Res. II, LLC v. Rice Drilling D, LLC*, No. 2:22-cv-2374, 2023 WL 1927799, at *3 (S.D. Ohio Feb. 10, 2023) ("Courts in the Southern District of Ohio may permit a party to file a sur-reply even without showing good cause if it does not result in prejudice toward the opposing party."). Though BCBSMA frets about Canter's using the new brief to make an argument not stated before, (Doc. 139, #2969), the Court is not convinced. The reply brief strikes the Court as employing different words to restate a theory he posited in his objections to the R&R—that (1) timely notice under the Plan means notice that procedurally complies with the applicable regulations and (2) the August 2015 explanation-of-benefits forms were not sufficient under that standard. (*Compare* Doc. 128, #2883–86, *with* Doc. 138, #2963–65). So it is not as though

---

[5] Canter's contention that BCBSMA's timeliness argument is newly raised is meritless. As BCBSMA points out, it staked out this exact position in its opposition brief before the Magistrate Judge's R&R. (Doc. 119, #2827). And to the extent that this argument was not clear (it was), Canter was on notice of the need to respond directly to that argument when it served as the legal basis for the Magistrate Judge's recommendation that the Court deny Canter's renewed motion for judgment as a matter of law. (Doc. 125, #2857). So the argument was properly before the Court at all relevant stages of this litigation, and Canter cannot now be heard to complain that he never had the opportunity to respond.

Canter's brief says anything BCBSMA or the Court has not already seen in the rest of the multitudinous filings in this case.

Accordingly, the Court will grant Canter's motion. Normally, a party would have attached the proposed filing as an exhibit to its request for leave. And the Court would then enter an order directing that party to docket the proposed filing. But here, when seeking leave to file his proposed brief, Canter took it upon himself also to file the proposed brief on the Court's docket without first having obtained leave from the Court. (Doc. 138). So no such order is necessary. But the Court pauses to note that Canter should not have done so. And while this misstep proved harmless here (given the Court's decision to grant leave), the Court admonishes Canter's counsel not to do the same in the future when he is neither authorized by the applicable rules nor granted leave from the Court to file the document in question.

## B.   The Motions to Reopen and for Judgment as a Matter of Law

With that out of the way, Canter's motion for judgment as a matter of law, (Doc. 112), boils down to whether he should receive interest on the $85,022 BCBSMA awarded him after the Court remanded the matter for further review by BCBSMA as the Plan Administrator.[6] The Court starts by explaining why Canter's argument

---

[6] The Court agrees with the Magistrate Judge that BCBSMA's "waiver" argument was misplaced. (Doc. 125, #2854–55 (citing Doc. 119, #2824–25)). Canter has pushed for interest from the very outset of this lawsuit. (*See* Doc. 1, #14). And while he did not specifically argue about this issue while challenging BCBSMA's position that *no money* was ever due under the Plan, Canter's simple failure to raise it until after remand cannot, on its own, be inconsistent with a claim for interest, let alone an implied waiver of such a claim. *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024) (explaining that the mere "failure to raise" an argument cannot amount to an implied waiver of that argument because "[a] finding of waiver requires *evidence* of a party's actions that evince his intentional relinquishment of a known right"

12

about the Plan's specific penalty interest provision is baseless. But it then explains why he is entitled to prejudgment interest on his claim in this action under standard common law principles.

### 1.    The Plan's Penalty Interest Provision

As a reminder, Canter first seeks to have interest applied to his $85,022 payment from BCBSMA under the Plan's penalty interest provision. (*Id.* at #2799–801). As a matter of law of the case, (Doc. 100, #2585–89), and given BCBSMA does not argue otherwise in the papers currently before the Court, the Court agrees with the Magistrate Judge that it should review the Plan's terms de novo, (Doc. 125, #2855). *Fulkerson v. Unum Life Ins. Co. of Am.*, 36 F.4th 678, 680–81 (6th Cir. 2022). A de novo review calls on the Court to review the policy's text and "give effect to its plain meaning in an *ordinary and popular* sense." *Id.* at 681 (emphasis added) (cleaned up). What does the penalty interest provision say?

> In the event *Blue Cross and Blue Shield* fails to comply with this provision [requiring it to mail a member who is filing his own claims the necessary claims forms], or within 45 days of receiving your claim, fails to send you a check or a notice in writing of why your claim is not being

---

(emphasis added) (citing *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 471–79 (9th Cir. 2023))). Moreover, whether interest applies to monies paid under a plan is not usually a ripe dispute until money exchanges hands and the recipient notices that interest was not included in that sum. *Cf. Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cali.*, 522 U.S. 192, 201 (1997) (explaining that the standard rule for accrual is "when the plaintiff has a complete and present cause of action" (cleaned up)—in other words, when the harm supporting the claim to relief has materialized); *see generally* 1A *Corpus Juris Secundum*, *Actions* § 291 (2024) (Generally, "when a wrong has been committed or a breach of duty has occurred, the cause of action has accrued."). So it would make little sense for Canter to have expended any energy contesting an argument about interest until it became clear that BCBSMA did not intend to pay Canter such interest—especially given BCBSMA had argued that it was categorically not obligated to pay Canter any money under the Plan.

> paid or a notice that asks you for more information about your claim,
> you may be paid interest on your claim[.]

(Doc. 77-2, #1710). A plain, ordinary reading of that provision suggests that the interest provision is triggered if at least one of two possible preconditions occurs: BCBSMA (1) fails to send claims forms if required, or (2) fails to respond to the submission of a claim in 45 days. (In other words, this provision operates as a penalty such that BCBSMA's delay in responding to claims submissions is penalized by the addition of interest.) And under that de novo interpretation of the Plan's terms (i.e., having given no deference to BCBSMA's interpretation), the Court sees no error with the Magistrate Judge's finding that BCBSMA did not need to send any claims forms *to Canter* because LSI submitted the claims on his behalf, (Doc. 125, #2857)—let alone clear error, which is the standard the Court must use given Canter did not object to this portion of the R&R, (Doc. 128, #2885–86 ("Because it was unnecessary for Canter to file the claim himself, … it was unnecessary for Canter requests [sic] the forms and therefore unnecessary for BCBSMA to send forms to Canter.")); Fed. R. Civ. P. 72(b) adv. comm. notes (suggesting that unobjected portions of R&R are reviewed for clear error). So the penalty interest provision applies here only if BCBSMA did not respond to a claim submission within 45 days.

Relatedly, on a de novo review (as Canter *did* raise an objection on this ground), the Court also finds that the Magistrate Judge did not err in concluding that BCBSMA timely responded to the notice of LSI's claims (i.e., that it did so within 45 days). (Doc. 125, #2857). As detailed in the background section, LSI submitted two claims to BCBSMA: one on July 30, 2015, and one on August 10, 2015. (Doc. 135-1

14

¶¶ 4–5, #2949–50). Less than 45 days later, BCBSMA sent Canter two explanation-of-benefits forms noting that no money was being paid at that time. (Doc. 26, #988, 1000). And, as required, BCBSMA explained why it was not paying Canter's claim on that date: BCBSMA lacked sufficient information to evaluate the claims and had requested records. (*Id.* at #990, 1002). In other words, "within 45 days of receiving [Canter's] claim, [BCBSMA] … sen[t] [Canter] … a notice in writing of why [Canter's] claim [wa]s not being paid." (Doc. 77-2, #1710). An ordinary reader would understand these explanation-of-benefits forms as clearly and unambiguously satisfying the notice required by the plain terms of the penalty interest provision, and as a result no interest obligations were triggered. Thus, Canter is owed nothing additional under this Plan provision.

Canter seeks to evade this reading by suggesting (without caselaw support) that "notice"—when used in the penalty interest provision—means adequate notice, which requires a court to review whether the relevant documents complied with all applicable regulations. (Doc. 128, #2880–86; Doc. 138, #2963–66). This argument fails. As stated just a few paragraphs ago, the applicable standard requires the Court to give legal force to the "plain meaning in an ordinary and popular sense" of the Plan's terms. *Fulkerson*, 36 F.4th at 681 (citation omitted). Arguing that a word in the Plan imports a *legal* notion set forth in *ancillary* regulatory requirements (not found within its four corners) does not come anywhere within striking distance of "plain meaning." *Id.* Rather than asking the Court to adopt language's "ordinary and popular sense," *id.* (citation omitted), Canter's argument demands application of

15

notice as a term of art. *See generally Term of Art*, Black's Law Dictionary (11th ed. 2019) ("A word or phrase having a specific, precise meaning in a given specialty, *apart from its general meaning in ordinary contexts*." (emphasis added)). Thus, Canter's argument, at its base, demands the Court rewrite the standard of interpretation that applies to ERISA plans like the one at issue.[7] The Court declines to do so. Under the plain terms of the Plan, BCBSMA provided notice within 45 days of receipt of both claims that no payment was forthcoming. (Doc. 26, #988, 1000; Doc. 135-1 ¶¶ 4–5, #2949–50). And those forms supplied an answer to the question "why [Canter's] claim [wa]s not being paid" at the time, (Doc. 77-2, #1710): BCBSMA was waiting for his medical records. The Plan's plain language therefore bars application of the penalty interest provision here. And Canter is owed no more money under that specific term.

## 2.     Canter is Entitled to Recover Prejudgment Interest

So that leaves Canter's other theory that the common law principles of unjust enrichment permit him to recover prejudgment interest on the $85,022 that BCBSMA paid him. (Doc. 112, #2802–04). The Court notes that although Canter characterizes his request for prejudgment interest as arising under an unjust enrichment or

---

[7] Even assuming the Court could apply some meaning to language in the Plan divorced from the plain and ordinary meaning of the terms employed, Canter has failed to point to any textual clues (or otherwise) suggesting why the Court should read a handful of regulations as being implicitly invoked by the use of the term "notice." That inability to ground his specialized reading of the interest provision in the Plan's text is also fatal to Canter's argument. *Williams v. Metzler*, 132 F.3d 937, 947 (3d Cir. 1997) ("Absent indicia [of use of] … a specialized meaning[,] … we will not alter [a common term's] accepted usage.").

restitution theory,[8] he is in fact invoking the common law right to prejudgment interest. *See McGlone v. Bell*, 681 F.3d 718, 728 n.2 (6th Cir. 2012) (noting district courts retain "discretion to address substance over form"). Prejudgment interest is a common law measure of damages that attaches to a claim for damages of a sum certain amount; it reflects the notion that the creditor should be compensated for the debtor's delay in payment. *Young v. Godbe*, 82 U.S. (15 Wall.) 562, 565 (1872) ("If a debt ought to be paid at a particular time, and is not, owing to the default of the debtor, the creditor is entitled to interest from that time by way of compensation for the delay in payment. And if the account be stated, as the evidence went to show was the case here, interest begins to run at once."). In other words, the original claim for a sum certain amount itself impliedly includes a request for relief equal to the sum certain amount *and* the value of interest measured from the time the monies were due and owing to the time that a check is cut. *Royal Indem. Co. v. United States*, 313 U.S. 289, 295–96 (1941) ("A suit upon a contractual obligation to pay money at a fixed or ascertainable time is a suit to recover damage for its breach, *including both the principal amount and interest* by way of damage for delay in payment of the principal after the due date." (emphasis added)).

As noted above, *see supra* note 6, Canter's claim from the inception of this lawsuit has been requesting his full contractual remedies—reimbursement for the two balances (which are the easily ascertainable amounts of $41,034 and $43,988,

---

[8] This is not to say Canter was off base to invoke unjust enrichment and restitution principles. As explained below, the Sixth Circuit requires district courts to consider equitable principles when fashioning an award of prejudgment interest. *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan* (*Schumacher I*), 711 F.3d 675, 685–86 (6th Cir. 2013).

17

respectively) arising from his July 6, 2015, surgery plus prejudgment interest. (Doc. 1 ¶¶ 12–13, 44–49, #3–4, 13–14). So, to resolve that claim completely, Canter would need either (1) to receive payment in the amount of $85,022 plus prejudgment interest, or (2) to obtain an adverse legal ruling that he is entitled to no benefits under the policy. *Royal Indem.*, 313 U.S. at 295–96.

So which is it here? To be sure, the Court has not ruled one way or another as to whether Canter is entitled to benefits under the Plan. The prior order in this case only remanded for BCBSMA to consider Canter's claim of benefits anew on a more complete record—it did not declare Canter's entitlement to benefits. (Doc. 100, #2594). But the lack of a judicial determination of entitlement to benefits imposes no bar to awarding prejudgment interest here. This is because BCBSMA, on remand, waived any defense that Canter is not entitled to monies under the Plan. Specifically, on May 16, 2022, BCBSMA sent Canter a letter approving his claim *under the Plan*. (Doc. 128-1). In that letter, BCBSMA made clear that it was "approving [Canter's] appeal for *coverage* of the procedure," an approval that came as a result of his "request [] for [BCBSMA *to provide benefits*." (*Id.* at #2895 (emphases added)). And were this and all other details in the letter not sufficiently clear, BCBSMA made its intention express by noting that the awarded benefits would be "*paid directly* to [Canter]." (*Id.* at #2896 (emphasis added)). In other words, BCBSMA, on reconsideration, determined that Canter was in fact owed money under the Plan and therefore should have been paid benefits. In adopting that legal position, BCBSMA acknowledged that Canter merits all relief that legally follows from his obtaining benefits under the

18

Plan. As noted above, 'all relief' includes prejudgment interest as a matter of common law, *Royal Indem.*, 313 U.S. at 295–96; *Young*, 82 U.S. (15 Wall.) at 565, which common law rule applies equally to claims brought under ERISA, *Bricklayers' Pension Tr. Fund v. Taiariol*, 671 F.2d 988, 989–90 (6th Cir. 1982) (concluding that prejudgment interest may be awarded under ERISA because the Supreme Court has held that such common law rules apply to statutory causes of action unless the statute directs otherwise). So, given BCBSMA's concession about Canter's rights under the Plan, Canter is correct that he merits further relief in the form of reopening the cause and entering judgment that includes an award of (the requested-but-so-far-missing) prejudgment interest.

The Magistrate Judge found otherwise—a position BCBSMA defends. According to the Magistrate Judge's R&R, "Canter lost no monetary benefit" because "he paid the Laser Spine Institute only $1,000 for his back surgery" and "BCBSMA owed the claim amount to the Laser Spine Institute, not to Canter." (Doc. 125, #2858 (citing Doc. 123-1)). BCBSMA endorses this theory that Canter was not actually entitled to the proceeds from the Plan, (Doc. 132, #2939–41), and argues further that Canter cannot be awarded prejudgment interest because "[t]here is no money judgment," (*id.* at #2939 (relying on the holding in *Guest-Marcotte v. Life Ins. Co. of N. Am.* (*Guest-Marcotte I*), No. 15-cv-10738, 2019 WL 3388478, at *3 (E.D. Mich. July 26, 2019))).[9]

---

[9] There is perhaps another argument that BCBSMA might have pressed as to why Canter is not entitled to recover prejudgment interest under the default common-law rule: that the Plan's express inclusion of a provision governing when interest applies is best construed as

Start with the theory that Canter is not owed any additional monies because the claim under the Plan is held by someone else. While intriguing on first blush, the Court cannot credit that argument. Yes, it seems odd that LSI, which submitted the claim, is not being reimbursed for the costs of the surgery.[10] But the Court cannot overlook BCBSMA's behavior on remand. Whatever merit BCBSMA's defense—that LSI is owed the Plan proceeds on the claim, not Canter—might have had before remand, it has no merit now, as BCBSMA has decided that as a matter of the Plan, *Canter* should be reimbursed for his July 6, 2015, surgery. That is, BCBSMA, which was fully aware from the beginning that LSI submitted the claims, (*see* Doc. 25, #705 (BCBSMA's notifying LSI that the claim was denied); Doc. 135-1, #2949–50 (noting that BCBSMA was made aware of *LSI*'s submission of claims in July and August of 2015)), nonetheless concluded on remand that Canter himself was entitled to benefits

---

impliedly excluding the availability of interest for any delay in payment that does not trigger that Plan provision. Take the extreme example of this. One could conceive of a world in which the Plan makes clear that the only interest awarded for a delayed payment is set forth in the Plan itself (i.e., "This provision governs the application of interest and is the exclusive remedy a party may obtain for any delay in payment."). Absent finding such a provision violates public policy or is unconscionable, it would seem the Court would be required to hold that if the claimant does not satisfy the provision in the Plan authorizing interest, he would not be entitled to obtain interest through a common law remedy. Put differently, there does not appear to be a rule preventing parties from waiving their common law remedies by contract, including a common-law right to recover prejudgment interest (absent some kind of unconscionability or public policy argument as alluded to above). One could thus foresee an argument applying the same logic here to suggest that the Plan's penalty interest provision is the sole means by which Canter could recover interest on his claims. All that said, the Court should not be understood to be opining on whether such an argument would have merit here. BCBSMA never presented such an argument to the Court, which means the Court need not and does not address it on the merits. *SAT Tech., Inc. v. CECO Env't Corp.*, No. 1:18-cv-907, 2023 WL 6119934, at *7 n.14 (S.D. Ohio Sept. 19, 2023).

[10] One may be wondering why LSI was never joined as a necessary party to this suit. BCBSMA's attorney represents that LSI is now defunct. (Doc. 72, #1443 n.5.) That said, there still remains the curious anomaly that LSI's creditors are not knocking at the door seeking the reimbursement themselves.

under the Plan, (Doc. 128-1). Put differently, BCBSMA, despite knowing of LSI's potential interest in the funds, instead concluded on remand that the Plan language required BCBSMA to provide coverage for the surgery by awarding *Canter* the requested benefits and *by paying him directly*. *See Andreae v. Cap. One*, 1:22-cv-618, 2024 WL 1579914, at *5 (S.D. Ohio Apr. 11, 2024) (discussing the requirements for implied waiver).

BCBSMA cannot now reverse course and disclaim Canter's entitlement to benefits under the Plan. While it may now regret that decision, the approval letter affirmatively shows that BCBSMA has taken the position that Canter is owed money under the Plan. And, as a result, because BCBSMA is bound by this knowing and voluntary decision, the Court cannot overlook its legal effect. *See Wood v. Milyard*, 566 U.S. 463, 466 (2012) ("A court is not at liberty … to bypass, [to] override, or [to] excuse a [] deliberate waiver of a limitations defense."). Namely, the legal effect of Canter's entitlement to a sum certain amount of benefits is that he equally enjoys a right to prejudgment interest for the delay in payment of those funds. *Royal Indem.*, 313 U.S. at 295–96. Hence, the Magistrate Judge erred in concluding (and BCBSMA is wrong to argue) that Canter cannot obtain prejudgment interest because he paid only $1,000 for the surgery. That fact simply does not weigh into whether he is entitled to prejudgment interest once it is clear that BCBSMA itself has admitted Canter was owed money under the Plan.[11]

---

[11] That said, Canter's being out of pocket only a grand does factor into the Court's consideration of the equities that is required when assessing the actual value of the prejudgment interest award. *Schumacher I*, 711 F.3d at 685–86.

BCBSMA's alternative argument does not work either. Essentially, in claiming that the Court cannot award prejudgment interest because there is no money judgment in this case, BCBSMA is arguing that it has mooted Canter's claim by paying him the sum certain amount of $85,022. (Doc. 119, #2820). In other words, BCBSMA contends that it paid Canter the full benefit under the Plan, and thus Canter has no claim to anything more. (*Id.*).

But that argument cannot work. The claim Canter brought was for the monies unlawfully withheld from him—a specified amount of $85,022 that he claims BCBSMA should have paid him long ago. And as explained above, under common law, prejudgment interest attaches at the moment such money is due and owing when no payment has been made. *Young*, 82 U.S. (15 Wall.) at 565 (explaining that once payment is not made for the sum certain owed, "interest begins to run at once"). In other words, Canter's original claim *necessarily* includes a demand for prejudgment interest (and he also specified he was seeking it), so anything less than the sum certain *plus that interest* is less than full satisfaction for that claim. BCBSMA cannot partially compensate Canter for less than his claim and then use that as a basis to evade a judgment for the remaining amount (unless Canter expressly agrees to release his claim). *See Calderon v. Moore*, 518 U.S. 149, 150 (1996) ("Even the availability of a partial remedy is sufficient to prevent a case from being moot." (cleaned up)); *cf. Jarrett v. United States*, 79 F.4th 675, 680 (6th Cir. 2023) ("By issuing Jarrett a check for the overpayment *plus interest*, the IRS resolved Jarrett's claim and mooted the refund lawsuit." (emphasis added)). For that reason, there is

no obstacle to the Court's reopening the case and entering a judgment providing the full remedy Canter requested (and to which he is now legally entitled given BCBSMA's determination that he was owed money under the Plan)—an award of the benefits amount plus prejudgment interest (adjusted for the $85,022 payment already made).[12]

As a result, the Court finds that Canter's motion to reopen has merit and grants it. And the Court finds that a prejudgment interest award follows as a matter of law given BCBSMA's behavior on remand acknowledging that Canter was owed benefits under the Plan. (Accordingly, the Court rejects the Magistrate Judge's contrary recommendations.)

The sole question that therefore remains is the amount of interest to award. Under Sixth Circuit law, "the district court may award pre-judgment interest at its discretion in accordance with general equitable principles." *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan* (*Schumacher I*), 711 F.3d 675, 685–86 (6th Cir. 2013) (cleaned up). A court abuses its discretion if it mechanistically applies the statutory interest rate set forth in 28 U.S.C. § 1961(a). *Id.* at 686. But a Court can

---

[12] True, BCBSMA cites a case for the proposition that a court could not award prejudgment interest upon a partial payment of the benefits on remand. (Doc. 119, #2829 (citing *Guest-Marcotte I*, 2019 WL 3388478); Doc. 132, #2939 (same)) But that case did not consider that a claim for benefits under an ERISA plan necessarily includes an attached demand for prejudgment interest beyond the sum certain amount, *see Guest-Marcotte I*, 2019 WL 3388478, at *3, so the Court declines to follow it. *The W. & S. Life Ins. Co. Benefits Comm. v. Jenkins*, 1:23-cv-609, 2024 WL 2132416, at *3 n.2 (S.D. Ohio May 13, 2024) ("Other district courts' decisions are not binding—only persuasive. And to the extent their decisions are unreasoned; conflict with binding, superior authority; or otherwise lack persuasive legal analysis justifying their holdings, a district court may reject such caselaw." (citations omitted)).

award such a rate if it "strike[s] [the proper] balance between making sure not to impose a punitive measure and allowing a Plan or Fund to 'retain the interest it earned on funds wrongfully withheld would be to approve of unjust enrichment.'" *Id.* (citation omitted). Here, Canter says that the Court should award interest computed at the prime rate. BCBSMA, on the other hand says interest (if awarded at all) should be at the lower rate specified by the statute above (basically the 1-year Treasury Bill rate).

In considering the appropriate rate here, there are factors weighing on both sides of the ledger. As the Court holds above, BCBSMA has conceded that it wrongfully withheld monies from Canter that he was owed under the Plan, such that refusing to award any amount of interest would result in its being unjustly enriched as a result. *Id.* at 687. But that alone does not equate to application of the prime interest rate here. This is because, as Canter acknowledges, he paid only $1,000 dollars to LSI. (Doc. 123-1). So to the extent he was out of pocket certain expenses, they were generally less than the actual amount awarded under the Plan. *Cf. Sun Life Assurance Co. of Can. v. Jackson*, No. 3:14-cv-41, 2018 WL 4489289, at *7 (S.D. Ohio Sept. 19, 2018) (considering that the insurer's paying the wrong person weighed in favor of application of the statutory prejudgment interest rate). And that means awarding the prime rate risks inappropriately giving Canter a windfall, thereby rendering the award of interest punitive rather than compensatory. *Schumacher I*, 711 F.3d at 686 (requiring courts to ensure that the prejudgment interest award is not punitive); *cf. In re Millenium Lab Hldgs. II, LLC*, 945 F.3d 126, 143 (3d Cir. 2019)

24

("Equity abhors a windfall." (citation omitted)). And considering that for almost all the time during which payment was delayed inflation hovered around 2% (dropping to close to 1% during 2016, 2019, and 2020, and even around zero during portions of 2015 and 2020), *Current US Inflation Rates: 2000–2024*, US Inflation Calculator (last visited May 15, 2024), https://perma.cc/9QQZ-YMRR, awarding an interest rate below the prime rate would still be a sufficient award to make Canter whole. *Sun Life*, 2018 WL 4489289, at *7.

Balancing all these considerations, the Court concludes that, while an award of prejudgment interest is required, the other equity factors, especially that setting a high interest rate will be punitive in light of the facts here, point to a blended prejudgment interest rate (explained below) that uses the weekly average 1-year constant maturity Treasury yield referenced in 28 U.S.C. § 1961(a) as the baseline. That rate best fits the remedial interests under ERISA and adequately compensates Canter without penalizing BCBSMA.[13] *Id.*; *see Hi-Lex Controls, Inc. v. Blue Cross*

---

[13] While Canter pushes for application of the prime rate of return, he does so by reference to rates set by other courts based on the facts in those cases and by highlighting the recent uptick in interest rates in the last three or four years. (*See* Doc. 112, #2803–04; Doc. 120, #2841–42; Doc. 128, #2889–90). The problem with rote reliance on the rates set by other courts is that those rates are tailor-made for the facts *of those cases*, which means they are useful as a cross-check only insofar as the equities balanced in those cases are similar to those at issue here. *See Jenkins*, 2024 WL 2132416, at *7 n.5 ("The fees awarded in other cases—dependent on the circumstances of those cases … —are helpful but only as cross-checks because they cannot and do not serve as substitutes for [Plaintiff's] explaining why *its* behavior *here* is reasonable as measured against the complexity of *this case*."). And while Canter highlights both the importance of placing the receiving party in the same stead had the payment not been delayed and general market conditions, he did not consider or discuss the other relevant factors, such as overall low inflation rates, the risk of punitive awards were the interest rate higher, and the fact that he paid LSI only $1,000, in the context of what proper rate should be awarded here. As the Court explains, consideration of the entirety of these issues compels the application of the lower, statutory rate, as opposed to the much higher prime rate.

*Blue Shield of Mich.*, 751 F.3d 740, 751–52 (6th Cir. 2014) (affirming a district court's use of the blended rate for each of the years of the 17-year period in determining the proper prejudgment interest award amount).

Both parties seem to agree that the Court should begin calculating interest from the date of the surgery in question. (Doc. 119, #2830; Doc. 128, #2889; *see* Doc. 128-1, #2895 ("This approval is valid for date of service July 6, 2015.")). Using that date as the start date, the Court calculates the blended prejudgment interest owed as follows. First, it obtains all the weekly averages for the 1-year constant maturity Treasury yield from July 6, 2015, until today from the Board of Governors of the Federal Reserve System. *Data Download Program*, Fed. Rsrv. Bd., (last visited May 24, 2024), https://perma.cc/BL6C-STDD. The Court, for each year, takes the mean interest rate of those weekly averages, which results in an average rate for each relevant year (or portion of the year).[14] *See* 28 U.S.C. § 1961(b) ("Interest … shall be compounded annually."). Then, for the years in which only a part of the year applies (here, 2015 from the date of the surgery until the end of the year, as well as 2024 from the start of the year until now), the Court calculates the prorated annual rate for the relevant portion of the year (i.e., multiplies the applicable average annual rate by the ratio of the number of days for which interest accrues in that year to the total number of days in that year).[15] Finally, the Court compounds the interest annually

---

[14] This yields yearly average interest rates of 0.412% for the relevant portion of 2015, 0.616% for 2016, 1.204% for 2017, 2.331% for 2018, 2.058% for 2019, 0.385% for 2020, 0.105% for 2021, 2.808% for 2022, 5.083% for 2023, and 4.992% for the relevant portion of 2024.

[15] Doing so yields the prorated interest rates of 0.202% for 2015 and 1.964% for 2024.

by multiplying the principal of $85,022 by the prorated rate for 2015 (prorated by the portion of the year during which interest was owed), the full-year average rates for 2016–2023, and the prorated rate for 2024. Doing so yields a total of $100,289.01, which means the total amount Canter is owed is $85,022 in principal plus $15,267.01 in interest. Therefore, the Court will enter judgment awarding Canter this amount but noting that partial payment has already been made such that BCBSMA's outstanding obligation is just the interest in the amount of $15,267.01.

*    *    *

Simply, while the Plan plainly does not authorize an award of interest, Canter is correct that he is entitled to prejudgment interest to receive full satisfaction for his ERISA claim given BCBSMA has now taken the position that *Canter* was entitled to benefits under the Plan—prejudgment interest is just part of his recovery having succeeded on the claim. *Taiariol*, 671 F.2d at 989–90. As a result, the Court grants his Amended Motion to Reopen and Return Case to Active Docket (Doc. 111) as well as his Amended Second Motion for Judgment on the Record after Remand (Doc. 112). And, as explained, the Court will award Canter judgment in his favor on Count II of his Complaint and award him $85,022 plus prejudgment interest calculated using the blended prejudgment interest rate that accords with 28 U.S.C. § 1961. That means BCBSMA owes Canter $100,289.01 total (which is necessarily offset by the $85,022 payment BCBSMA already made).

C.     **Motion for Fees**

That bring us to Canter's request for fees and costs for successfully obtaining a remand in this action. (Doc. 103). In ERISA actions, the Court has the discretion to award fees and costs under § 502(g)(1). 29 U.S.C. § 1132(g)(1). As the Sixth Circuit explained, this discretion is governed by consideration and balancing of five factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec'y of Dep't of Lab. v. King*, 775 F.2d 666, 669 (6th Cir. 1985); *First Tr. Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005) (explaining that the factors are "simply considerations representing a flexible approach"). If after consideration of these factors the Court finds that an award of fees and costs is warranted, it still must assess the reasonableness of the requested award, which requires application of the lodestar approach (i.e., multiplying a reasonable rate by the number of hours an attorney reasonably should have expended on the suit). *Bldg. Serv. Loc. 47 Cleaning Cont'rs Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401–02 (6th Cir. 1995).

The Magistrate Judge found that an award of fees and costs was warranted and calculated a proposed reasonable award. First, the R&R found that all agree (as does the undersigned) that Canter had some success on the merits by obtaining a remand order. (Doc. 125, #2859). The R&R then found that four of the five factors weighed in favor of an award: (1) BCBSMA was sufficiently culpable for the denial of benefits because it failed adequately to explain what medical evidence was necessary

to process Canter's claim, and it refused to process an internal appeal Canter sought, thereby preventing him from proving his entitlement to benefits, (*id.* at #2859–60); (2) BCBSMA never argued it could not pay an award, (*id.* at #2860); (3) BCBSMA's relative culpability for not complying with the Plan meant a reasonable award of fees would deter future misconduct in administering ERISA plans, (*id.* at #2860–61); and (4) BCBSMA's arguments against remand were roundly rejected, which means its legal positions lacked merit relative to Canter's, (*id.* at #2861). Given these findings that nearly all the factors weighed in favor of an award, the R&R concluded an award was merited. (*Id.* at #2862).

Turning to the reasonableness of the award, the R&R found that the proposed billing rate of $490 per hour was reasonable for ERISA attorneys like Canter's counsel. (*Id.*). And the Magistrate Judge concluded that while most of the line items for which Canter's counsel sought fees were reasonable, he should not recover for the 43.9 hours expended on a motion to compel discovery responses for the same reasons that led the Court (via the then-assigned judge) to deny his prior request for fees for that motion. (*Id.* at #2863 (citing Doc. 75); *see* Doc. 76). Finally, the Magistrate Judge noted she anticipated denying any request for fees related to the preparation and filing of Canter's post-remand motions (though no such request had been made), given the R&R concluded Canter's arguments lacked merit. (Doc. 125, #2863–64, 2864 n.3 (acknowledging that Canter filed his fee motion before his post-remand motions but noting that any fees incurred to file such motions "would not be deemed compensable in the event Canter seeks a further award of attorney fees")).

29

Both parties objected in part.

Canter objected only to the extent that the R&R prejudged whether he would merit an award of fees for his post-remand motions since no such request had yet been made. (Doc. 128, #2891–93). Canter's objection is well-taken given the Court generally should not rule on matters not properly presented by the parties (subject to narrow exceptions)—the party-presentation principle. *United States v. Sineneng-Smith*, 590 U.S. 371, 375–77 (2020). So the Court does not opine on whether a motion for fees related to the post-remand motions would or would not merit an award of fees and costs. The issue was simply not presented to the Court for review at this time.

For its part, BCBSMA objected but only as to whether any fee award is proper here, not to the reasonableness of the R&R's recommendation as to the amount or to the costs. (Doc. 129, #2899). According to BCBSMA, the Magistrate Judge erred in finding that three of the four factors as to which there was a dispute weighed in favor of an award of fees and costs here. (*Id.*). Specifically, BCBSMA disagrees that it engaged in culpable conduct, that an award of fees here would have a deterrent effect, and that its arguments were meritless. (*Id.*). Take each in turn.

### 1.   BCBSMA's Culpability

Start with BCBSMA's culpability. As this Court canvassed in its prior Opinion, BCBSMA's behavior in reviewing Canter's claim left much to be desired. In denying Canter's claim for lack of evidence, BCBSMA never explained what evidence was missing from Canter's records that would permit him to perfect that claim. (Doc. 100, #2575–76). BCBSMA never even informed Canter what evidence it had considered,

thereby leaving Canter in the dark as to how he could push his claim forward. (*Id.* at #2577–79). Moreover, the explanation BCBSMA offered for why the claim had to be denied was fatally deficient. Rather than consider *all* factors listed in the Plan, BCBSMA focused solely on the "InterQual criteria" to the exclusion of all other potentially relevant evidence. (*Id.* at #2589–93). And even more concerning, BCBSMA inappropriately limited its request to the provider for Canter's medical records to the date of the surgery itself, rather than asking for all medical evidence that led to the surgery. (*Id.* at #2577–78).

Those deficiencies are glaring. BCBSMA's consistent failure to provide Canter any meaningful insight into the claims process and its disregard for the need to evaluate *all relevant evidence* to assess a claimant's right to make a claim under the Plan were improper. *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 377 (6th Cir. 2009) (holding that "[w]here a plan administrator engages in an inadequate review of the beneficiary's claim[,] … attorney fees are appropriate" and noting that "engag[ing] in a selective review of the record" or "rel[ying] on selective portions of the claimant's medical records to justify its denial decision" constitute examples of such improper, culpable behavior). Based on BCBSMA's mishandling of Canter's claims from LSI's submission to the initiation of this suit, the Court agrees with and sees no error in the Magistrate Judge's finding that BCBSMA is culpable for the denial of benefits. So the first factor supports a fee award here.

BCBSMA attempts to recharacterize its actions as simply a misreading of the terms of the Plan documents and an "honest mistake in regard to the scope of the

31

records that it voluntarily requested concerning Plaintiff." (Doc. 129, #2906, 2908–09). This understates the impropriety of BCBSMA's actions.

For starters, BCBSMA fails to explain why its fixation on only one set of factors (the InterQual criteria) to the exclusion of all other relevant considerations in the Plan during the review process should be viewed as a simple misinterpretation of the Plan's terms. (*See* Doc. 100, #2589–90). As the Court explained previously, BCBSMA's narrow analysis has no reasonable support in the Plan's terms or even in the InterQual Guidelines themselves, (*id.* at #2589–93). *See Heffernan v. UNUM Life Ins. Co. of Am.*, 101 F. App'x 99, 109 (6th Cir. 2004) (holding that a plan administrator was culpable and fees were warranted because it "denied [a] claim based on a theory that lacked legitimate foundation"). A cursory review of the relevant provisions shows that the Plan requires BCBSMA to "us[e] all of the guidelines described below"—of which there are six—not just the one relating to medical policies as BCBSMA did. (Doc. 77-2, #1655). In other words, this was no mere misinterpretation. BCBSMA's analysis of what was in the record gave short shrift to all factors but the one most convenient to its denial.

In addition, BCBSMA cannot shift the blame to Canter for its inadequate request for Canter's medical records or discount its responsibility by suggesting that its selective review was the result of an honest mistake. BCBSMA gave Canter *zero* basis from which he could understand why his claim was denied, which means he had no basis for knowing what evidence could have changed the decision. For that reason, BCBSMA has no leg to stand on when it suggests Canter should have done a better

job of proving his claim, (Doc. 129, #2906), even assuming it is correct that it had no duty to investigate the claims, *but cf. McAlister v. Liberty Life Assurance Co. of Boston*, 647 F. App'x 539, 549–50 (6th Cir. 2016) (questioning whether a fiduciary has a duty to investigate an ERISA claim, but not affirmatively rejecting it). Besides, once BCBSMA took it upon itself to request the records, it acted unreasonably by requesting Canter's medical records only from the day of the surgery—in other words, BCBSMA itself acted to keep the scope of the administrative record improperly narrowed. *Cf. Guest-Marcotte v. Life Ins. Co. of N. Am.* (*Guest-Marcotte II*), 768 F. App'x 357, 361–62 (6th Cir. 2019) (finding the plan administrator was culpable in part because it rejected a claim based on the claimant's failure to proffer "evidence [the administrator] … itself declined to obtain"). Put simply, BCBSMA is largely, if not solely, responsible for the lack of evidence. It kept Canter in the dark.

Given this overall pattern of misconduct in BCBSMA's (mis)handling of Canter's claim, the Court sees no merit in its objections to the Magistrate Judge's finding that it was meaningfully and substantially culpable for the denial of benefits. This first factor thus supports a fee award.

## 2. Deterrence

The third factor (i.e., the second disputed factor here) relates to whether a fee award would have a "deterrent effect … on other plan administrators[, which will] … likely [] have more significance in a case where the defendant is highly culpable" than in a case in which he has made only "[h]onest mistakes." *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 937 (6th Cir. 1996). But as explained above, *see*

33

*supra* Section C.1, BCBSMA's behavior in handling Canter's claim was plainly improper. As a result, "[a]n award of fees in this case further confirms that insurers must perform meaningful claim reviews"—namely, insurers should not withhold necessary information from beneficiaries about what evidence is before the plan administrator or what evidence was lacking for them to perfect their claims. *Niswonger v. PNC Bank Corp. & Affiliates Long Term Disability Plan*, No. 3:10-cv-377, 2011 WL 4543929, at *3 (S.D. Ohio Sept. 29, 2011).

While BCBSMA disputes this finding, it does so by reiterating its self-serving and erroneous characterization of its handling of Canter's claim as "result[ing] [from] [] honest mistake[s]." (Doc. 129, #2910). As the Court already rejected this characterization of what occurred above, *see supra* Section C.1, the Court adopts its prior reasons without the need to repeat them here. BCBSMA was highly culpable for the denial of benefits, and an award of fees would provide meaningful deterrence here. Hence, this factor also favors an award of fees.

### 3. Relative Merit

That leaves the last disputed factor—the relative merits of the parties' legal positions. The Court agrees with the Magistrate Judge that not only were Canter's arguments superior to BCBSMA's, but there was little merit to the legal positions BCBSMA staked out. (Doc. 125, #2861). In its prior Opinion and Order, the Court found all BCBSMA's merits arguments unavailing in large part because it "offer[ed] no support for its argument[s]" by failing to identify "compelling caselaw" and by not "directly confront[ing] the issue at hand." (Doc. 100, #2577–78, 2584; *see id.* at #2576,

2581, 2592 (describing BCBSMA's arguments variously as "unavailing," "run[ning] off the tracks," and "do[ing] exactly" what the documents it cited did not permit). Such is not the language used when resolving a close question, as BCBSMA contends. (*See* Doc. 129, #2911). For this reason, BCBSMA cannot reasonably support its assertion that the Court merely rejected its arguments, such that one should find its legal positions "no more devoid of merit than that of any other losing litigant." (*Id.* (quoting *Shelby Cnty.*, 581 F.3d at 378 (cleaned up))). BCBSMA's contention ignores the fact that the Court resoundingly rejected BCBSMA's merits arguments as without support. Namely, the Court finds that its legal positions while litigating this case had little legal merit, so this last factor likewise supports an award of fees. *Heffernan*, 101 F. App'x at 109 (affirming an award of fees on the grounds that the plan administrator "sought to defend [its] theory" "that lacked legitimate foundation" "with reference to isolated snippets from the record").

\* \* \*

Altogether, the Court finds on its de novo review that four of the five factors a court must consider when assessing whether to award fees weighs in favor of such an award here, as recommended.[16] (Doc. 125, #2862). And, as explained, BCBSMA's arguments to the contrary fail to persuade. So when it balances all relevant factors (including that Carter's suit here benefits only himself, which weighs against an award), the Court finds that awarding fees and costs is proper. *Heffernan*, 101 F. App'x at 109.

---

[16] As a reminder, BCBSMA does not object to the R&R's finding that it could pay an award of fees. (Doc. 125, #2860). The Court does not disturb that finding.

That leaves only the question of reasonableness. But as the Court noted, Canter did not object to the Magistrate Judge's reduction of the hours requested related to his prior discovery motion, and BCBSMA did not object to the reasonableness of the award the Magistrate Judge calculated. So the Court reviews the recommended award for clear error. *Williams*, 2023 WL 8824845, at *3. And the Court sees none.

Canter's attorney's billing rate of $490 per hour is reasonable considering similar rates have been awarded in other cases in this district. *Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan* (*Schumacher II*), 995 F. Supp. 2d 835, 845 (S.D. Ohio 2014) (collecting cases with rates ranging from $250 to $500 per hour that were justified by the seniority and experience of the attorneys). And with the removal of the hours that Canter's attorney spent on a motion to compel discovery that previously resulted in a denial of a request for fees, (Doc. 76), the Court finds (after its own review of Canter's counsel's itemized list of hours, (Doc. 103-1, #2678–89)) no clear error in the Magistrate Judge's assessment—informed by her firsthand knowledge of the case's development and the record—that 417.9 hours expended over nearly five years of litigation is reasonable. (Doc. 125, #2864). *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) ("The court can rely on estimates based on its overall sense of a suit" to determine what constitutes a reasonable number of hours expended. (cleaned up)). So the Court will award Canter $204,771 in fees.

Similarly, the Court sees no clear error in the R&R's recommendation that the Court award Canter all his requested costs (a point that no one contests), (Doc. 125, #2864)—$622.75 is quite a reasonable amount after five years of litigation. So the Court will also award Canter $622.75 in costs.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Canter's motion for fees. (Doc. 103).[17]

## CONCLUSION

As detailed above, the Court **ADOPTS IN PART AND REJECTS IN PART** the R&R, (Doc. 125); **SUSTAINS IN PART AND OVERRULES IN PART** Canter's Objections (Doc. 128); **OVERRULES** BCBSMA's Objections (Doc. 129); **GRANTS** Canter's Motion for Permission to File Reply to BCBSMA's Response to Order (Doc. 136); **GRANTS** Canter's Amended Motion to Reopen and Return Case to Active Docket (Doc. 111); **GRANTS IN PART AND DENIES IN PART** Canter's Amended Second Motion for Judgment on the Record after Remand (Doc. 112); **GRANTS IN PART AND DENIES IN PART** Canter's Motion for Award of Attorney's Fees for Remand (Doc. 103); and **DENIES AS MOOT** Canter's duplicative motion for fees, (Doc. 101).

Accordingly, the Court **DIRECTS** the Clerk to **REOPEN** this matter. The Court **AWARDS Canter $100,289.01 ($15,267.01 of which is for an award of prejudgment interest) on Count II of the Complaint as well as $204,771 in**

---

[17] Because Canter filed two identical motions for fees (Docs. 101, 103), the Court agrees with the Magistrate Judge that the duplicative motion for fees should be denied as moot, (*see* Doc. 125, #2864), given the matter is resolved by disposing of its carbon copy.

**fees and $622.75 in costs**. Because Canter has already been paid $85,022, **BCBSMA owes Canter $15,267.01 plus $204,771 in fees and $622.75 in costs, for a total of $220,660.76**. As is required by 28 U.S.C. § 1961, the Court also **AWARDS** Canter post-judgment interest on the entirety of the judgment currently outstanding (prejudgment interest, fees, and costs), which shall run from the date of the entry of the Court's judgment. *Caffey v. Unum Ins. Co.*, 302 F.3d 576, 586–91 (6th Cir. 2002). The Court **DIRECTS** the Clerk to enter judgment for that amount against BCBSMA and for Canter and to **TERMINATE** this matter on its docket.

   **SO ORDERED.**

May 24, 2024
_____
**DATE**

        _____
        **DOUGLAS R. COLE**
        **UNITED STATES DISTRICT JUDGE**